[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 04-13598
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 10, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-00031-CR-LAC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

REMYS ROBLES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(May 10, 2005)

Before BLACK, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Remys Robles pled guilty to possession with intent to distribute cocaine. At sentencing, he disputed the quantity of drugs attributed to him in the pre-sentence investigation report. The district court found the disputed quantity was properly attributed to Robles. By including the controverted quantity in its sentencing guideline calculation, the court was able to and did impose a higher sentence than it otherwise could have imposed given the facts admitted by Robles. The court, first, sentenced Robles to 24 months' imprisonment under a mandatory guidelines scheme. Next, the court stated an alternative sentence of 24 months, treating the guidelines as only advisory.

In light of *United States v. Booker*, __ U.S. __, 125 S. Ct. 738 (2005), Robles now contends we should vacate his sentence because the district court erred and that error was not harmless. While the district court did err when it imposed a sentence under a mandatory guidelines scheme, the Government has met its burden of showing the error was harmless beyond a reasonable doubt and we, therefore, affirm the defendant's sentence.

## I. BACKGROUND

On April 27, 2004, Remys Robles pled guilty to possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and possession of a firearm during and in relation to a drug trafficking crime, in violation of 18

2

U.S.C. § 924(c)(1). Robles received a sentence of 84 months' imprisonment: 60 months on the firearm possession count (the statutory minimum) and 24 months on the cocaine distribution count. Robles appeals only the latter.

In May 2003, the Fort Walton Beach, Florida Police Department received information from a confidential informant that Robles was selling cocaine and other drugs from his house at 127 Rainbow Drive, Fort Walton Beach, Florida. Two trash sweeps yielded several plastic baggies and drinking straws containing a white powdery residue, which tested positive for cocaine. Robles' trash also contained a digital scale and a number of plastic baggies with the corners cut off; the corners are commonly used to package narcotics. Police surveillance of his house observed a high volume of short-term traffic, another indicator of drug trafficking activity.

On June 30, 2003, police executed a search warrant at Robles' house. When police entered the residence, Robles and another individual named Pablo Sanchez were present; both men were handcuffed and advised of their *Miranda* rights. In response to questioning by the officers, Robles admitted he had marijuana in his bedroom for personal use, but denied possessing any cocaine or having engaged in drug dealing of any kind. Sanchez stated he had just flown in from Puerto Rico and was unaware of what was happening at Robles' house.

A search of Sanchez's luggage revealed a Federal Express (FedEx) box addressed to "Katherine Walker." The box was shipped from Puerto Rico to 127 Rainbow Drive, Fort Walton Beach, Florida and was delivered on June 20, 2003. Inside the FedEx box, police discovered several packages containing cocaine, some of which were hidden inside videotape cassettes. In Robles' bedroom, the police found marijuana and ammunition for a 9mm handgun. When asked if he owned a gun, Robles indicated he did and it was in his car. A search of the car produced a 9mm semi-automatic pistol, cocaine, ecstasy, and Hydrocodone tablets. The marijuana equivalency weight of all drugs found was 52.12 kilograms.

The pre-sentence investigation report recommended attributing the entire 52.12 kilograms to Robles because the cocaine found in Sanchez's luggage should be considered relevant conduct under the guidelines. The 52.12 kilograms, combined with Robles criminal history category of I, resulted in a base offense level of 20. He received a 3 level reduction for acceptance of responsibility, leaving him with an offense level of 17 and a sentencing guideline range of 24 to 30 months.

Robles objected to the drug weight attributed to him; he contended he should not be held accountable for the quantity of drugs found in the FedEx box

located in Sanchez's luggage. Taking into consideration only the drugs Robles admitted possessing – the marijuana equivalency weight of which was 15.34 kilograms – his base offense level would have started at 16 and been reduced to 13. The guideline range for an offense level of 13 is 12 to 18 months.

In response to Robles' objection, the Government pointed to the evidence indicating that drug dealing was occurring at Robles' house and that the conduct in question – possession of cocaine – had the same common purpose (drug distribution) as the crime Robles admitted committing. Robles offered no explanation as to who "Katherine Walker" was or as to why the package containing cocaine was sent from Puerto Rico to his address. The district court found the cocaine in the FedEx box should be considered relevant conduct, having been persuaded by the fact that the box was not addressed to Sanchez but to an unknown person and was delivered to Robles' house.[1]

At sentencing, Robles argued that *Blakely v. Washington*, 542 U.S. __, 124 S. Ct. 2531 (2004), rendered the federal sentencing guidelines unconstitutional.

---

[1]Robles failed to challenge the district court's conclusion that the cocaine in the FedEx box was relevant conduct in his initial brief to this Court, raising it for the first time in his supplemental brief. Issues not raised in a party's initial brief will be deemed waived. *See United States v. Nealy*, 232 F.3d 825, 830 (11th Cir. 2000).

The district court rejected Robles' *Blakely* challenge,[2] but due to the uncertainty surrounding the continued viability of the guidelines, the Government requested that the court enter an alternative sentence. The court stated it would impose the same sentence whether the guidelines were mandatory or not, concluding:

> [I]f the guidelines turned out to be what I think they should be in the first place, and that's guidelines, I do find that after all of these years of tinkering and study by the guideline commission, that there's a certain range to them that make the application of the principals [sic] of the guidelines not quite legitimate. *And my sentence would be the same regardless of whether* Blakely *has invalidated the guidelines or not, because I would apply them as guidelines and reach the same conclusion that I will here today.*

After the defendant spoke and urged the court to be lenient, in part because of his age, the court imposed a sentence of 24-months and stated, "I do find this sentence meets the goals of punishment and hopefully deters anyone else who might consider similar criminal conduct."

## II. STANDARD OF REVIEW

Robles objected to the district court's use of the guidelines at his sentencing hearing and thereby preserved the issue for appeal. We review his claim of error

---

[2]Robles was sentenced before this Court held in *United States v. Reese*, 382 F.3d 1308 (11th Cir. 2004), *vacated by* 125 S. Ct. 1089 (2005), that *Blakely* did not apply to the federal guidelines.

*de novo* and will reverse unless any error was harmless. *United States v. Sanchez*, 269 F.3d 1250, 1271 (11th Cir. 2001) (en banc).

### III. DISCUSSION

A defendant's Sixth Amendment right to a jury trial is violated "where under a mandatory guidelines system a sentence is increased because of an enhancement based on facts found by the judge that were neither admitted by the defendant nor found by the jury." *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005). Here, there is no dispute Robles' Sixth Amendment right was violated and his sentence was in error: he denied having anything to do with the cocaine in the FedEx box, and the court relied upon that cocaine to impose a higher sentence than Robles otherwise could have received. Nor is there a dispute that Robles made a timely objection to the court's erroneous use of the guidelines.

The only question before us is whether the error was harmless. An error is harmless if it does not affect the substantial rights of the defendant. Fed. R. Crim. P. 52(a). When the error is of the constitutional variety, a higher standard is applied and it must be "clear beyond a reasonable doubt that the error complained of did not contribute to the sentence obtained." *United States v. Paz*, __ F.3d __, __ (11th Cir. 2005) (No. 04-14829) (quoting *United States v. Candelario*, 240 F.3d 1300, 1307 (11th Cir. 2001)) (citations, brackets, and internal quotations

7

omitted). The burden to prove the error was harmless beyond a reasonable doubt rests squarely on the government. *See United States v. Olano*, 507 U.S. 725, 741, 113 S. Ct. 1770, 1781 (1993).

In most pre-*Booker* sentencing cases, our review for harmless error will give rise to the same issue presented when we review for plain error: we simply do not know what sentence the district court would have imposed absent the error. *See Rodriguez*, 398 F.3d at 1301. Because we often do not know, the party bearing the burden faces a difficult challenge. Appellate courts, however, sometimes do have an idea of what the district court would have done. *See, e.g.*, *United States v. Shelton*, 400 F.3d 1325, 1332 (11th Cir. 2005) (vacating sentence for plain error where clear evidence existed that the district court would impose a different sentence on remand); *United States v. Riccardi*, __ F.3d __, __ (10th Cir. 2005) (No. 03-3132) (finding constitutional *Booker*-error harmless in part because the district court sentenced at the top of the guidelines). This is such a case.

The Government has a high burden to meet, but it is not an insurmountable one. In this case, we do not have to wonder what sentence the district court would impose if it treated the guidelines as guidelines, because we already know the court would impose the same sentence. Thus, we can conclusively say the error did not affect Robles' substantial rights.

Robles raises two primary objections to our reliance on the district court's statements to find harmless error. First, he contends the district court can now take into account factors that were previously "not ordinarily relevant," specifically age. *See* U.S.S.G. § 5H1.1-1.6. If the only sentence we were reviewing was imposed with a mindset that the guidelines were mandatory, Robles' argument would carry more weight, but it is undercut by the presence of an alternative sentence, which was imposed without the restraints previously placed on district courts. The court's statements make clear that it did not feel limited in what evidence it could consider.

Second, Robles argues the district court's alternative sentence fails to account for the new emphasis placed on the factors listed in 18 U.S.C. § 3553(a). After reviewing the § 3553(a) factors, we are at a loss to see how specific consideration of them could possibly change the result. To the contrary, the district court already expressly considered punishment and deterrence when sentencing Robles. *See* § 3553(a) ("The court . . . shall consider . . . (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct.")

Even if Robles was sentenced post-*Booker* and we were reviewing for reasonableness, we would not expect the district court in every case to conduct an accounting of every § 3553(a) factor, as Robles suggests, and expound upon how each factor played a role in its sentencing decision. Certainly, the more insight a district court can provide us with, the better it will be for appellate review, especially when the court sentences outside of the guidelines; however, when a district court sentences within the guidelines, we could not expect a court to do more than was done in this case.

## IV. CONCLUSION

The district court stated its sentence would be the same even if the guidelines were only advisory. Now that the guidelines are only advisory, we know with certainty beyond a reasonable doubt what the district court would do upon remand. When an error would not change the achieved result, it is harmless. If we failed to find the error in the present case harmless, we would be flouting the Supreme Court's instruction that we "apply ordinary prudential doctrines," *Booker*, 125 S. Ct. at 769, by setting up in effect a *per se* rule of reversal for all constitutional *Booker*-errors being reviewed for harmlessness. That we will not do.

**AFFIRMED.**

10