[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 28, 2005
THOMAS  K. KAHN
CLERK

_____

No. 04-15481
Non-Argument Calendar

_____

D. C. Docket No. 03-20157-CR-CMA

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RAFI RAFAEL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(June 28, 2005)**

Before BIRCH, BARKETT and WILSON, Circuit Judges.

PER CURIAM:

Rafi Rafael appeals his 51-month sentence for conspiracy to defraud and

making a false bill of lading. For the reasons stated below, we affirm.

I.

A grand jury indicted Rafael and twenty-three others for their roles in a large-scale criminal enterprise involving fraudulent moving companies. The conspirators submitted low estimates to potential clients, thus enabling them to secure the moving contracts. Once the movers loaded the clients' possessions on their trucks, they would announce an inflated price and demand payment before they would return the goods to the victims. The indictment charged thirty-six counts, including conspiracy, money laundering, extortion, and creating false bills of lading. Rafael was charged in Count One for conspiracy to defraud, in violation of 18 U.S.C. § 371, and Count Thirty for making a false bill of lading, in violation of 49 U.S.C. § 80116.

Rafael pled guilty to both counts. At sentencing, the parties disputed the amount of loss attributable to Rafael.[1] The court established the amount of loss through the following method. An FBI agent testified regarding the total amount of fraudulent charges in the conspiracy, over $1.3 million. The agent also testified that co-defendants stated that Rafael was involved in the conspiracy for a period of

_____

[1]Rafael had earlier agreed to plead guilty pursuant to a plea agreement under which the parties would stipulate that Rafael was responsible for $211,888 of loss due to his fraud. The district court later granted Rafael's motion to withdraw this plea. Thereafter, Rafael pled "straight up" to the indictment, and the parties proceeded to sentencing without a stipulated loss amount.

2

nineteen months. The Government introduced checks payable to Rafael for his work with the movers that spanned a period of eleven months. Rafael testified that the checks were the result of isolated moves, and did not represent the duration of his involvement in the conspiracy. The court divided the total loss by the total number of months of the conspiracy's existence, and arrived at a monthly average loss amount of $42,907. The court then found that Rafael was a member of the conspiracy for a period of fourteen months.[2] Multiplying the average monthly loss by the number of months Rafael was involved in the conspiracy, the court arrived at $601,580 of loss attributable to Rafael. As a result, the district court applied a 14-level enhancement to Rafael's base offense level. In combination with Rafael's enhancements because the crime had more than fifty victims, and for Rafael's leadership role in the offense, and subtracting a two-level adjustment for acceptance of responsibility, Rafael's final sentencing range was 51 to 63 months.

Rafael objected at sentencing to the district court's enhancements based on *Blakely v. Washington*, ___ U.S. ___, 124 S. Ct. 2531 (2004). Although Rafael admitted to a loss amount of $80,000 (which provided for an eight-level enhancement), he argued that *Blakely* made any further enhancements

---

[2]As the Government acknowledges, the dates the court used spanned only thirteen months. The difference is immaterial because the enhancement Rafael received based on loss amount would have been the same using either thirteen months or fourteen months as the relevant timeline.

3

unconstitutional. In other words, Rafael's position was that the Federal Sentencing Guidelines remained in effect after *Blakely*, except for upward adjustments and enhancements. The district court overruled this objection and sentenced Rafael at the low end of the applicable range, to 51 months' imprisonment. The court went on to explain, though, that "I would sentence Mr. Rafael without consideration of these Guidelines to the same amount, which is 51 months." (R.9:51).

## II.

On appeal, Rafael challenges the district court's calculation of the amount of loss attributable to him. He also maintains his *Blakely* objection, asserting that the district court's sentence violated his Sixth Amendment rights. Finally, he argues that the court considered improper evidence during the sentencing hearing. We address these arguments in turn.

## A.  Amount of Loss Calculation

We review a district court's factual findings at sentencing for clear error, and its legal conclusions and application of the Guidelines *de novo*. *United States v. Miranda*, 348 F.3d 1322, 1330 (11th Cir. 2003). The Guideline under which Rafael was sentenced, U.S.S.G. § 2B1.1, provides for upward adjustments in the base offense level based on the loss attributable to the defendant. U.S.S.G. § 2B1.1. However, "[t]he court need only make a reasonable estimate of the loss,"

4

U.S.S.G. § 2B1.1 cmt. n.3(C), and the Government's burden in establishing the amount is a preponderance of the evidence. *United States v. Rodriguez*, 398 F.3d 1291, 1296 (11th Cir. 2005). The Guideline specifically contemplates that sometimes loss will have to be determined through factors such as "[t]he approximate number of victims multiplied by the average loss to each victim." U.S.S.G. §2B1.1 cmt. n.3(C)(iii). The district court employed a similar methodology here. It is, of course, not surprising that precise records are often unavailable in a fraudulent scheme in which the participants are usually paid in cash. Moreover, even if some victims did not pay the entire inflated amount that the conspirators attempted to extort from them, the Guidelines clearly instruct the court to consider *intended* loss at sentencing. *See* U.S.S.G. § 2B1.1 cmt. n.3(A).

The court's calculation was not clearly erroneous. The court arrived at a reasonable estimate of the loss amount by subtracting initial estimates from inflated prices. Reliable evidence, including the checks to Rafael as well as his own testimony, supports the district court's finding that Rafael was involved in the conspiracy for well over a year. Rafael objects on appeal that the district court did not make a finding that he reasonably foresaw the activities of his co-conspirators, but he did not raise this specific objection below. Our review on this issue, therefore, is for plain error. *See Rodriguez*, 398 F.3d at 1298 (providing plain error

5

standard).  Rafael cannot establish plain error.  Evidence adduced at sentencing, including Rafael's leadership role in the offense (an enhancement Rafael does not challenge) and Rafael's coast-to-coast involvement in various moving companies, would have supported a finding that the other conspirators' criminal activities were reasonably foreseeable to Rafael.[3]

**B.**     ***Blakely/Booker***

After Rafael was sentenced, the United States Supreme Court applied its decision in *Blakely* to the Federal Sentencing Guidelines in *United States v. Booker*, ___ U.S. ___, 125 S. Ct. 738 (2005).  The Government concedes that Rafael's *Blakely* objection in the district court adequately preserved the *Booker*-based challenge he now brings on appeal.  Therefore, "we review the defendant's *Booker* claim in order to determine whether the error was harmless."  *United States v. Mathenia*, ___ F.3d ___, ___, 2005 WL 1201455 at *2, No. 04-15250 (11th Cir. May 23, 2005) (citing *United States v. Shelton*, 400 F.3d 1325, 1331 n.7 (11th Cir. 2005), and *United States v. Paz*, 405 F.3d 946, 948-49 (11th Cir. 2005)).

The Supreme Court held in *Booker* "that the Sixth Amendment right to trial

---

[3]In any event, in light of our conclusion on Rafael's remaining claims, he cannot establish that any alleged error affected his substantial rights, because his sentence would have been the same even without taking the Guidelines into account.  *See Rodriguez*, 398 F.3d at 1299 (appellant bears burden of showing that plain error "must have affected the outcome of the district court proceedings" by showing that the probability of a different result is "sufficient to undermine confidence in the outcome") (citations and quotations omitted).

6

by jury is violated where *under a mandatory guidelines system* a sentence is increased because of an enhancement based on facts found by the judge that were neither admitted by the defendant nor found by the jury." *Rodriguez*, 398 F.3d at 1298.

> We have found, based on this holding, that the district courts could have made both a constitutional and a statutory error in sentencing defendants pre-*Booker*. The constitutional error is the use of extra-verdict enhancements to reach a guidelines result that is binding on the sentencing judge; the error is in the mandatory nature of the guidelines once the guidelines range has been determined. The statutory error occurs when the district court sentences a defendant under a mandatory [g]uidelines scheme, even in the absence of a Sixth Amendment enhancement violation.

*Mathenia* at *2 (quotations and citations omitted, alteration in original). But while the district court did err in enhancing Rafael's sentence based on facts neither admitted by him nor found by a jury and by sentencing him under the Guidelines, we are convinced beyond a reasonable doubt that the errors were harmless.

Our decision in *United States v. Robles*, ___ F.3d ___, 2005 WL 1083487, No. 04-13598 (11th Cir. May 10, 2005), is materially indistinguishable. In that case, like this one, the district court announced an alternative sentence that it would have imposed even without consideration of the Guidelines. *Robles* at *2. As we stated in *Robles* in discussing the constitutional error: "Now that the guidelines are

7

only advisory, we know with certainty beyond a reasonable doubt what the district court would do upon remand. When an error would not change the achieved result, it is harmless." The same is true here.

In *Mathenia*, the district court announced an alternative sentence in a case involving statutory *Booker* error. *Mathenia* at \*1. As we stated there: "Given that the government met the more difficult constitutional harmless error standard in *Robles*, we have no trouble concluding that the government has met the less stringent statutory harmless error standard in this case where the judge made comments virtually identical to those in *Robles*. Thus, the government has demonstrated with fair assurance that the district court's error of applying the guidelines in a mandatory fashion did not affect, or had but a slight affect, on Mathenia's ultimate sentence." Likewise, given the court's comments at Rafael's sentencing that it would have sentenced him to the same 51-month sentence even if the Guidelines were merely advisory, we are persuaded that the *Blakely/Booker* error was harmless.

## C.    Improper Evidence

Rafael argues that the district court improperly considered at sentencing evidence from the trials of Rafael's co-defendants, and that the court improperly considered a Government exhibit without giving Rafael an opportunity to rebut

8

that evidence. These arguments are meritless. First, Rafael did not object to the court's statement that it was familiar with the nature of the conspiracy based on the co-defendants' trial, and so our review is for plain error only. There was no error because, when read in context, the court was merely indicating that it understood that the Government would need more time to present its evidence regarding the total amount of loss in the conspiracy. Nothing in the sentencing hearing supports the claim that the court relied on anything outside the record in Rafael's case.

During the testimony of an FBI agent, the Government introduced a summary exhibit discussing items seized under a search warrant in order to establish the scope of the conspiracy. The court offered to grant Rafael a continuance for the purpose of reviewing the exhibit and preparing rebuttal. At the conclusion of the agent's examination, however, counsel for Rafael elected to proceed with cross-examination, and stated that a continuance was unnecessary. This amounted to a waiver of any argument that Rafael was prejudiced by the district court's consideration of the exhibit. *See United States v. Masters*, 118 F.3d 1524, 1526 (11th Cir. 1997).

III.

For the reasons stated, we affirm Rafael's conviction and sentence.

**AFFIRMED.**

9