[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-11372
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 15, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-00010-CR-9-6

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JERMAINE MCKEEVER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(September 15, 2005)

Before TJOFLAT, DUBINA and MARCUS, Circuit Judges.

PER CURIAM:

Jermaine McKeever appeals his 175-month sentence, imposed after he pled guilty to distributing approximately 12 grams of cocaine powder, in violation of 21 U.S.C. § 841(a). On appeal, McKeever argues that the district court violated his Sixth Amendment rights by enhancing his sentence based on a quantity of drugs

not admitted by him or established beyond a reasonable doubt to a jury, in violation of United States v. Booker, 543 U.S. ___, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), which was decided prior to McKeever's sentencing hearing. After careful review of the parties' briefs and the record, with particular attention to the transcript of the sentencing hearing, we affirm.

Because McKeever preserved his Booker claim in the district court, our review is de novo, but we will reverse and remand only for harmful error. See United States v. Paz, 405 F.3d 946, 948 (11th Cir. 2005). Preserved constitutional and statutory errors under Booker are reviewed for harmless error. See United States v. Mathenia, 409 F.3d 1289, 1291-93 (11th Cir. 2005). Constitutional error is "harmless" when the government can show beyond a reasonable doubt that the error did not contribute to the defendant's ultimate sentence. Id. at 1291. We review statutory error under a less demanding test: whether a review of the proceedings, as a whole, shows that the error either did not affect the sentence or had only a slight effect. Id. at 1291-92. "If one can say with fair assurance that the sentence was not substantially swayed by the error, the sentence is due to be affirmed even though there was error." Id. at 1292 (internal marks omitted). The government has the burden of proof under both standards. Id.

The facts relevant to McKeever's sentencing claim are these. McKeever and

nine codefendants were charged in a 14-count indictment related to a drug conspiracy. Of the fourteen counts, McKeever was indicted in: (1) Count 1, prior to and from April 2001 to the present, possessing with intent to distribute in excess of 50 grams of cocaine base, in violation of 21 U.S.C. § 846; (2) Count 6, on April 17, 2003, distributing 86 grams of cocaine base, in violation of 21 U.S.C. § 841(a); (3) Count 12, on January 8, 2003, distributing 55 grams of cocaine hydrochloride, in violation of 21 U.S.C. § 841(a); and (4) Count 13, on January 8, 2003, distributing 12 grams of cocaine hydrochloride, in violation of 21 U.S.C. § 841(a). Pursuant to a written plea agreement, McKeever pled guilty to Count 13, which involved 12 grams of cocaine hydrochloride, and the government dismissed the remaining counts. McKeever proceeded to sentencing.

According to the presentence investigation report ("PSI"), in April 2001, special agents of the Drug Enforcement Administration (DEA) began investigating five of the nine defendants as significant distributors of cocaine powder and crack cocaine. On January 8, 2003, DEA special agents met with a confidential informant ("CI") as part of an undercover operation specifically investigating McKeever. On that date, the CI contacted McKeever and requested to purchase cocaine. McKeever subsequently met the CI and undercover Special Agent Vinson Jenkins. After traveling to several different locations, McKeever provided the CI

3

first with 55.6 grams of cocaine powder, in exchange for $2,000, and then with an additional 12.4 grams of cocaine powder, in exchange for $600.

On April 17, 2003, the CI and Special Agent Jenkins again met with McKeever to purchase some crack cocaine. This time McKeever was accompanied by a codefendant who informed the CI and Agent Jenkins that someone was "cooking" and that the product should be ready in about thirty minutes. While they were waiting, McKeever stated that "I'm, I'm only doing it, cause I, cause I know you" and then stated to the codefendant that "I got to run here for a minute man. You gone take care of them?" to which the codefendant responded affirmatively. The codefendant gave the CI his phone number, and the CI and Agent Jenkins left the location. Several hours later, the CI contacted the codefendant by phone, and the codefendant subsequently provided the CI with 86.5 grams of crack cocaine in exchange for $2,250.

The PSI attributed to McKeever the 55.6 grams and 12.4 grams of cocaine powder sold on January 8, 2003, and the 86.5 grams of crack cocaine sold by McKeever and the codefendant on April 17, 2003. The PSI stated that according to the drug equivalency tables found at U.S.S.G. § 2D1.1, one gram of cocaine powder is the equivalent of 200 grams of marijuana and one gram of crack cocaine is the equivalent of 20 kilograms of marijuana, so that, when the amounts sold on

January 8, 2003 and April 17, 2003 were converted and added together, McKeever was attributed with the equivalent of 1,743.6 kilograms of marijuana.

The PSI calculated a base offense level of 32, based on a drug offense involving at least 1,000 kilograms but less than 3,000 kilograms of marijuana, see U.S.S.G. § 2D1.1(c)(4), and recommended a 3-level adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a)(b). Based on an adjusted offense level of 29 and a criminal history category III, the Guidelines imprisonment range was 108 to 135 months' imprisonment. McKeever also faced a statutory maximum 240-month term of imprisonment, pursuant to 21 U.S.C. § 841(b)(1)(C).

McKeever objected to the PSI, citing Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), and arguing that the base offense level was calculated erroneously by including the drug amounts attributable to Counts 1, 6 and 12, all of which the government had agreed to dismiss in exchange for his guilty plea on Count 13. The probation officer responded that McKeever should be attributed with the quantity of cocaine charged in those counts pursuant to the relevant conduct provisions of U.S.S.G. § 1B1.3, and that Booker, which only made the Guidelines advisory, still permitted the court to impose a sentence at or below the statutory maximum for the offense.

McKeever also objected to the factual statement in the PSI that, during the

5

April 17, 2003 sale of crack cocaine, he spoke to the CI. McKeever maintained that only his codefendant spoke with the CI. McKeever also argued that he was not present at the time the illegal drugs were sold between his codefendant and the CI and no evidence existed that he was even aware that the subsequent sale occurred or that he profited from it. The probation officer responded that, pursuant to the relevant conduct provisions of U.S.S.G. § 1B1.3, Booker, and considering this Court's decisions in United States v. Rodriguez, 398 F.3d 1291 (11th Cir.), cert. denied, 125 S. Ct. 2935 (2005), and United States v. Duncan, 400 F.3d 1297, 1304 (11th Cir. 2005), there was no requirement that McKeever profit from or be present during a drug transaction to be attributed with the quantity of drugs sold during the transaction.

At the sentencing hearing, the district court overruled McKeever's objections and adopted the PSI's recommendations as to relevant conduct, after consideration of Booker and this Court's decisions in Rodriguez and Duncan. In reviewing the Guidelines range of 108 to 135 months' imprisonment, the court noted that the maximum statutory penalty for Count 13 was 240 months' imprisonment. See 21 U.S.C. § 841(b)(1)(C). The court rejected McKeever's Booker objections, noting:

> I know the misgivings that [McKeever] has, that [he] pled guilty to something. But when a [c]ourt is sentencing, you look at the person

6

and somewhat take into consideration – not always – the totality of the circumstances. But that has been really refined in relevant conduct. Obviously, you cannot take into consideration things that are not related. He is not being charged with bank robbery. That would be completely irrelevant, or treason, or a million other things. But I think it is fair for the Court to consider when you examine the transaction, "I've got to run out of here for a minute, man. You gone take [care] of them." So, I accept the probation officer's position regarding that.

Later during the hearing, when McKeever testified about his participation in the charged crimes, the court interrupted him and said, "Mr. McKeever, I want you to say anything you wish. But I want to tell you, you've been convicted one time of perjury. . . . I value the truth. I sit here every day and I listen. I think you are committing perjury now. Now, I'm telling you what I believe. You are walking over the line when you start lying to me. You can't soft soap your way by me. I have heard it all."

Prior to imposing sentence, the district court indicated that it had read Booker, as well as our decisions in Duncan and Rodriguez. Also before announcing McKeever's sentence, the court noted:

> [B]etween December 25, 2000 and April 8, 2001, he [McKeever] was issued 15 citations for violations of a local beer and wine ordinance. And he has a conviction of perjury, which I previously noted. He has fathered ten children from ten different women. I'm not going to try to particular[ly] balance out at this time the good and the bad, based upon his criminal conduct, his misleading the Court here today, his complete irresponsibility with bringing children into the world and not supporting them.

7

The court then imposed a 175-month term of imprisonment, to be followed by five years of supervised release, observing that the 175-month term was the same sentence that one of McKeever's codefendants received. This appeal followed.

We have enumerated two types of Booker error: (1) a Sixth Amendment error -- the error of imposing a sentencing enhancement, under a mandatory regime, based on judicial findings that go beyond the facts admitted by the defendant or found by the jury, and (2) a statutory error -- the error of being sentenced under a mandatory Guidelines system. United States v. Shelton, 400 F.3d 1325, 1330-1331 (11th Cir. 2005).[1]

In Rodriguez, we reviewed a claim of Booker constitutional error that a defendant's sentence violated his Sixth Amendment rights because it was based on a judge's finding of facts that were neither charged in an indictment nor proven to a jury. Id. at 1297. We noted that the use of "extra-verdict enhancements," such as relevant conduct, "remains a constitutional part of guidelines sentencing in the post-Booker era." Rodriguez, 398 F.3d at 1301; see also United States v. Duncan, 400 F.3d 1297, 1304 (11th Cir. 2005) (noting "[o]ur Circuit's precedent uniformly

---

[1]Because it is easier for the government to establish the harmlessness of Booker non-constitutional error than the harmlessness of Booker constitutional error, see United States v. Robles, 408 F.3d 1324, 1327 (11th Cir. 2005), when a district court's constitutional Booker error is harmless, any non-constitutional Booker error also will be harmless. Based on our conclusion that Booker constitutional error, if any, in this case was harmless beyond a reasonable doubt, we need not, and do not, address Booker non-constitutional error.

states, '[r]elevant conduct of which a defendant was acquitted nonetheless may be taken into account in sentencing for the offense of conviction, as long as the government proves the acquitted conduct relied upon by a preponderance of the evidence.'" (citation omitted)). As we observed in <u>Duncan</u>, sentencing judges can continue to consider relevant acquitted conduct <u>when applying the Guidelines in an advisory manner</u>, "[f]or when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." 400 F.3d at 1304-1305.

Here, the district court cited our decisions in <u>Rodriguez</u> and <u>Duncan</u> and did not enhance McKeever's sentence based on "extra-verdict enhancements" in a <u>mandatory</u> system. The court explained at length its reasoning for giving McKeever a sentence within the statutory range but exceeding the Guidelines range. Our own thorough review of the sentencing transcript indicates that, in addition to consideration of the Guidelines range, the court took into account many of the factors enumerated in 18 U.S.C. § 3553(a) when sentencing McKeever, as directed by <u>Booker</u>. <u>See</u> 125 S. Ct. at 764; 18 U.S.C. § 3553(a) ("The court . . . shall consider . . .(1) the nature and circumstances of the offense and the history and characteristics of the defendant; . . . (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for– (A) the applicable

9

category of offense committed by the applicable category of defendant as set forth in the guidelines . . . (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct").

After Booker, "all guidelines decisions are now advisory," United States v. Magluta, --- F.3d ----, 2005 WL 1750143 *13 (11th Cir. Jul. 27, 2005), which the district court recognized in the instant case. We can find no indication that the district court considered, or applied, the Guidelines as mandatory, rather than discretionary. Moreover, even if there was Booker error, of either type, we would find no effect on McKeever's substantial rights since it is clear beyond any reasonable doubt, given the court's imposition of a sentence above the Guidelines range, its consideration of Booker, Rodriguez, and Duncan, and its enumeration of some of the § 3553(a) factors, that McKeever would receive the same sentence at a new sentencing hearing.[2] Accordingly, we affirm his sentence.

**AFFIRMED.**

---

[2]Cf. Robles, 408 F.3d at 1328 (stating that even if the defendant "was sentenced post-Booker and we were reviewing for reasonableness, we would not expect the district court in every case to conduct an accounting of every § 3553(a) factor . . . and expound upon how each factor played a role in its sentencing decision"). After the district court has accurately calculated the Guideline range, it "may impose a more severe or more lenient sentence" that we review for reasonableness. United States v. Crawford, 407 F.3d 1174, 1179 (11th Cir. 2005). Although McKeever does not address the reasonableness of his sentence if we hold, as we do, that there was no reversible Booker error, in the light of the factors outlined in section 3553(a), we also would find the district court's sentence was reasonable. Cf. United States v. Winingear, --- F.3d ----, 2005 WL 2077087 *4 (11th Cir. Aug. 30, 2005) (considering § 3553(a) factors, as applied to defendant's sentence, and finding sentence was reasonable).