[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 16, 2007
THOMAS K. KAHN
CLERK

No. 06-13565
Non-Argument Calendar

_____

D. C. Docket No. 01-10061-CR-JLK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JORGE ALEMAN,
a.k.a. Ileana Bombino,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(May 16, 2007)**

Before CARNES, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

This is the second time we have had occasion to review Jorge Aleman's sentence. In his first appeal, we vacated Aleman's life sentence because the district court did not give him notice that it intended to upwardly depart from the then-mandatory guidelines sentence and because the court misapplied the guidelines in upwardly departing. United States v. Aleman, No. 02-16621, at 3–11 (11th Cir. Mar. 1, 2004). We remanded and instructed the district court to re-sentence Aleman within the then-mandatory guidelines range of 121 to 151 months imprisonment. Id. at 11, 13.

The court held a re-sentencing hearing on September 20, 2004. At that hearing, Aleman objected that application of the sentencing guidelines to his case violated the Sixth Amendment as interpreted by the Supreme Court's then-recent decision in Blakely v. Washington, 542 U.S. 269, 124 S. Ct. 2531 (2004). The district court overruled his Blakely objection, noting that this Court had held in United States v. Reese, 382 F.3d 1308 (11th Cir. 2004), vacated, 543 U.S. 1114, S. Ct. 1089 (2005), that the Supreme Court's decision in Blakely did not apply to the federal sentencing guidelines. The court then sentenced Aleman to 151 months in prison, the high end of the guidelines range.

Aleman did not file a notice of appeal within 10 days of his re-sentencing. See Fed. R. App. P. 4(b)(1)(A)(i) ("In a criminal case, a defendant's notice of

2

appeal must be filed in the district court within 10 days after . . . the entry of either the judgment or the order being appealed . . . .").  Instead, almost a year later, he moved to file an out-of-time appeal, which the district court treated as a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  On June 13, 2006, the court granted Aleman's § 2255 motion, vacated his sentence, and summarily reimposed the same 151-month sentence in accordance with our remand instructions in the first appeal.

Aleman appeals this most recent 151-month sentence.  He contends that the district court committed both statutory and constitutional <u>Booker</u>[1] error because he was sentenced under the then-applicable mandatory guidelines regime and his mandatory sentence was enhanced based on facts not admitted by him or found by a jury.

We take as a given that the court committed statutory and constitutional <u>Booker</u> error in sentencing Aleman, and we will assume that his <u>Blakely</u> objection at the September 2004 sentence hearing was sufficient to preserve the <u>Booker</u> issue at the June 2006 hearing where the district court reinstated after <u>Booker</u> what it had done when it first sentenced him before <u>Booker</u>.

We agree with the government that even if the district court committed

---

[1] <u>United States v. Booker</u>, 543 U.S. 220, 125 S. Ct. 738 (2005).

statutory and constitutional <u>Booker</u> error at the re-sentencing, and even if the errors were properly preserved for appeal, they were nevertheless harmless. To establish that a statutory <u>Booker</u> error is harmless, the government has the burden to show that, viewing the sentence proceedings in their entirety, the error did not affect the defendant's sentence, or had but a very slight effect. <u>United States v. Mathenia</u>, 409 F.3d 1289, 1292 (11th Cir. 2005) (per curiam). "If one can say with fair assurance that the sentence was not substantially swayed by the error, the sentence is due to be affirmed even though there was error." <u>Id.</u> (quotations and alterations omitted). To show that a constitutional <u>Booker</u> error is harmless, the government has the greater burden to show, beyond a reasonable doubt, that the error did not contribute to the defendant's ultimate sentence. <u>Id.</u> at 1291–92.

Here, the government has met its burden as to both harmless error standards. At the September 2004 re-sentencing hearing, the court said:

> [O]h, let me find just, so I can eliminate this business the Appellate Court always comes up with when they want to change something the Trial Court has done, they are saying "The Judge didn't know he could do certain things. The Judge didn't know he had discretion to do something" or "The Trial Judge, obviously, just didn't understand the full parameters of his authority. He has only done it for 40 years. So, therefore, he probably is confused that he has discretion to do this and to do that and to do the other thing."
>
> Let me assume for purposes of this sentencing that I have the discretion to depart downward or upward. Let me assume I have discretion to hold the Guidelines unconstitutional and/or constitutional

4

except as bound by U.S. versus Reese, and I certainly respect that opinion and take that into consideration. Let me assume that I have all the authority in the world, just like I did the first 15 years that I sentenced people before the Guidelines came into effect so we won't have to deal with that issue on appeal that "Oh, the Judge didn't know he had the authority to do all these things."

So, I find in the best light of everything favorable to the defendant, favorable to everybody, the best I can do is "Okay. I have got all the authority I need."

I am going to apply the Guidelines. . . .

(R6:19.) We read the court's comments to mean that if it had complete discretion to sentence the defendant, unconstrained by any notion of a mandatory guidelines regime, it would still give the defendant a guidelines sentence, as it did here. There is nothing to indicate that the court had changed its mind at the re-sentencing hearing in 2006 and every reason to believe that it had not.

The district courts in Mathenia and United States v. Robles, 408 F.3d 1324 (11th Cir. 2005) (per curiam) made comments similar to the ones the court did here. In those cases, we held that the courts' statements that they would impose the same sentence on the defendant even if the guidelines were not mandatory rendered any statutory or constitutional Booker error harmless because it did not affect the courts' ultimate sentence.

In Mathenia, for example, the district court said that "if the Supreme Court affirms the decision in Booker and holds that, under Blakely, the United States

5

Sentencing Guidelines are unconstitutional, then I would nonetheless consider the guidelines as—for their persuasive value or as advisory, and the sentence I would impose would be the same." 409 F.3d at 1291. We said that the court's statutory <u>Booker</u> error in sentencing the defendant pursuant to mandatory guidelines was harmless because "the sentencing judge told us that whether the guidelines were mandatory as they were pre-<u>Booker</u>, or advisory as they are post-<u>Booker</u>, [the defendant]'s sentence would be the same." <u>Id.</u> at 1292. "[T]he government ha[d] demonstrated with fair assurance that the district court's error of applying the guidelines in a mandatory fashion did not affect, or had but a slight affect, on [the defendant]'s ultimate sentence." <u>Id.</u> at 1292–93.

And in <u>Robles</u>, the district court, after committing a constitutional <u>Booker</u> error in enhancing the defendants sentence under a mandatory guidelines regime based on facts not admitted by the defendant or found by a jury, said that "my sentence would be the same regardless of whether <u>Blakely</u> had invalidated the guidelines or not, because I would apply them as guidelines and reach the same conclusion that I will here today." 408 F.3d at 1326 (emphasis omitted). On appeal, we held that the court's error was harmless because "we do not have to wonder what sentence the district court would impose if it treated the guidelines as guidelines, because we already know the court would impose the same sentence.

6

Thus, we can conclusively say the error did not affect [the defendant's] substantial rights." Id. at 1327.

In this case, as in Mathenia and Robles, we do not have wonder about what sentence the district court would impose if the guidelines were advisory and the court had post-Booker discretion to sentence the defendant. The court told us that if it "had all the authority in the world," it would still give Aleman the same 151-month sentence. Accordingly, any statutory or constitutional Booker errors the court made were harmless in that they did not affect the defendant's sentence.

Aleman also contends that his sentence is unreasonable because the district court failed to consider the 18 U.S.C. § 3553(a) factors. We have held, however, that "nothing in Booker or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005). Thus, there was no obligation, as Aleman suggests, that the district court state that it had considered the § 3553(a) factors in imposing the 151-month sentence.

The operative question for our purposes is whether this sentence was reasonable in light of the § 3553(a) factors. We conclude that it was. On five different occasions, Aleman was paid to captain a go-fast boat smuggling a total of

118 illegal aliens from Cuba into this country. On one smuggling trip, Aleman was spotted by the Cuban Boarder Guard. As the Cuban officials chased his boat, Aleman shot at them with a pistol and forced some of the illegal aliens he was smuggling to go overboard into the water so that the Cuban officials would be distracted with rescuing them. During all this commotion, a women he was smuggling was struck on the head and had to be tended to by another alien who was a doctor.

Aleman dropped this boatload of aliens on an island in the Bahamas and told them he would return in the evening to complete the trip to the United States. Three days later, the United States Coast Guard picked up the aliens on the island. They had survived by eating cacti and snails, but not the woman who had been injured. Without medical held, she had never regained consciousness and had died.

We, like the district court, consider Aleman's criminal conduct to be very serious. He committed multiple felonies, used a gun in the commission of one felony, could have caused an international incident, and left a boatload of desperate people, including one who was seriously injured, on a deserted island for days with no food or medical attention. See 18 U.S.C. § 3553(a)(1) ("The court, in determining the particular sentence to be imposed, shall consider the nature and

8

circumstances of the offense and the history and characteristics of the defendant . . . ."); id. § 3553(a)(2)(A) (and shall consider "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense").  Aleman's 151-month prison sentence at the upper end of his advisory guideline range was more than reasonable, in his favor.  Indeed, any lesser sentence would have been unreasonable.

**AFFIRMED.**