[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14728
Non-Argument Calendar
_____

D. C. Docket No. 1:14-cr-20390-DPG-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MANUEL DEJESUS LORA,
a.k.a. Emillo Encarnacion Melendez,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 1, 2015)

Before MARTIN, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Manuel DeJesus Lora appeals his 120-month sentence, imposed above the advisory guideline range of 63 to 78 months, after he pled guilty to one count of conspiracy to possess five kilograms or more of cocaine with the intent to distribute, in violation of 21 U.S.C. § 846 (Count 1); one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 3); and one count of illegal reentry after deportation, in violation of 8 U.S.C. § 1326(a) (Count 4). On appeal, Mr. Lora argues that his sentence is procedurally and substantively unreasonable.

Upon review of the parties' briefs and the record, we conclude that the district court did not abuse its discretion when it sentenced Mr. Lora, because it sufficiently explained its reasons for imposing the sentence and appropriately considered the 18 U.S.C. § 3553(a) factors. Accordingly, we affirm Mr. Lora's sentence.

# I

Mr. Lora pled guilty to Counts 1, 3, and 4 of a four-count indictment. According to the presentence investigation report ("PSI"), law enforcement surveilled Mr. Lora purchasing cocaine from a co-conspirator outside an apartment complex. During the arrest of the co-conspirator, Mr. Lora's son attempted to escape the premises while concealing approximately 1.5 kilograms of cocaine. Subsequent to his arrest, Mr. Lora admitted to purchasing the cocaine. He also

revealed that he was residing in the United States illegally and that he had been deported in 2000 following a three-year prison term for conspiracy to distribute cocaine. A subsequent search of his apartment led to the discovery of two firearms under Mr. Lora's bed and numerous rounds of ammunition in his bedroom closet. Mr. Lora admitted that the guns were his.

The probation officer calculated a base offense level of 26 for Count 1 pursuant to U.S.S.G. § 2D1.1, and grouped Counts 1 and 3 pursuant to § 3D1.2(c). Count 4 (illegal reentry) represented a separate harm and was calculated as a separate group. Together, the groups added an additional 2-level enhancement to the offense levels for Counts 1 and 3. Mr. Lora also received a 2-level enhancement under § 2D1.1(b)(1) for possession of a dangerous firearm. The probation officer then applied a 3-level reduction based on Mr. Lora's acceptance of responsibility, which resulted in a total adjusted offense level of 27.

Due to his prior narcotics convictions, Mr. Lora was assigned a criminal history category of II. In 1998, Mr. Lora was convicted of conspiracy to distribute and possess 7.2 kilograms of cocaine. In addition to the drugs, law enforcement recovered a loaded handgun and various implements used for the packaging and distribution of large quantities of cocaine from Mr. Lora's residence. As noted earlier, Mr. Lora served a three-year prison sentence and was deported in 2000.

Based on his criminal history category of II and an adjusted total offense level of 27, Mr. Lora's advisory guidelines range was 78 to 97 months. The maximum statutory penalty for Count 1 was 20 years' imprisonment, while the mandatory minimum was 5 years' imprisonment. The maximum term of imprisonment for Count 3 was 10 years, and the maximum term for Count 4 was 20 years.

In his acceptance of responsibility statement, Mr. Lora admitted that he "was dealing in drugs." PSI at 7 ¶ 23. He also indicated that he intended to continue dealing in drugs had he not been caught: "I didn't have enough for exactly 2 kilos so I gave [the co-conspirator] $35,000 for under 2 kilos and I was going to pay him the rest when I could sell what I had. There wasn't any way in the world I could have purchased 10 kilos at the time." *Id.*

Mr. Lora objected to the amount of cocaine the PSI initially attributed to him. At the sentencing hearing, the district court agreed that he should only be responsible for 1.7 kilograms of cocaine, rather than the nearly 10 kilograms indicated in the PSI. D.E. 75 at 8. This resulted in a mandatory minimum sentence as to Court 1 of 5 years rather than 10. The district court also reduced Mr. Lora's total offense level by 2 levels, in anticipation of amendments to the guidelines that would lower the base offense level. *Id.* at 12. The final adjusted offense level thus

4

became 25. Based on these adjustments, Mr. Lora's advisory guidelines range was 63 to 78 months' imprisonment. *Id.* at 17.

The government then moved for an upward variance "to reflect the severity" of the crimes, asserting that Mr. Lora's criminal history and the circumstances of the presently charged crimes justified the variance:

> This is an individual who was a drug trafficker, was expelled from the United States, came back, lived under an assumed identity for a[n] extended period of time, resumed drug trafficking, had firearms, had narcotics [and] involved his 19-year old son in the drug trade. . . . This is an individual who . . . has no reason to be in the United States other than to commit crimes. . . . [W]e would ask for a high sentence . . . to reflect that.

*Id.* at 18.

Given an opportunity for allocution, Mr. Lora apologized for his actions and stated that he did not oppose the sentence. *Id.* at 18–19. Mr. Lora also stated that he had intended to return the firearm involved in Count 3, but was waiting for an amnesty program regarding illegally obtained firearms. *Id.*

The district court granted the government's motion for an upward variance and ordered concurrent sentences of 120, 60, and 120 months' imprisonment for Counts 1, 3, and 4, respectively. *Id.* at 19–21. In imposing the sentences, the district court explained:

> The Court having considered the presentence investigation report, the pleadings filed and the statements from the parties, I do first note that the modified total offense level is a 25 and a criminal history category of [II], which places the defendant's advisory

5

guideline range between 63 to 78 months. However, the Court finds that a variance is appropriate.

The Court, again, having considered the statements of the parties, the presentence report, which contains [the] advisory guideline range and the statutory factors contained in Title 18, United States Code, Section 3553[(a)], I find that again, the variance is appropriate.

. . . .

And, again, the Court varied because I find that the sentence that I imposed is reflective of the offenses involved, which are three different offenses, very different in nature and the defendant's criminal history. And I find the sentence to be sufficient but not greater than necessary.

(*Id.*). Counsel for Mr. Lora objected to the sentence and variance as being more than necessary to satisfy the § 3553(a) factors. *Id.* at 21.

## II

Mr. Lora first argues that his sentence was procedurally unreasonable because the district court did not provide an adequate statement of reasons for its variance from the guidelines range. Mr. Lora asserts that the district court did not properly explain the specific conduct in his "record" that justified the upward variance. He also argues that the district court improperly used his status as an alien as justification for the upward variance.

We review the procedural reasonableness of a sentence imposed outside the guidelines range for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). "[W]e must ensure that the district court committed no significant

procedural error, such as 'failing to consider the [18 U.S.C.] § 3553(a) factors[.]'" *United States v. Langston*, 590 F.3d 1226, 1236 (11th Cir. 2009) (quoting *Gail*, 552 U.S. at 51) (alterations in *Langston*).[1] "The party challenging the sentence has the burden of showing the sentence to be procedurally unreasonable." *United States v. Hill*, 783 F.3d 842, 844 (11th Cir. 2015)

The district court must provide a statement of reasons for imposing a sentence. *See* 18 U.S.C. § 3553(c). "Where the judge imposes a sentence outside the Guidelines, he will explain why he has done so." *Rita v. United States*, 551 U.S. 338, 357 (2007). But district courts do not have to conduct an accounting of every factor or explain the role each played in the sentencing decision. *See United States v. Robles*, 408 F.3d 1324, 1328 (11th Cir. 2005). Rather, "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita*, 551 U.S. at 356. If the district court varies from the guidelines range, it must offer a "sufficiently compelling [justification] to support the degree of the variance." *United States v. Irey*, 612 F.3d 1160, 1186–87 (11th Cir. 2010) (en banc). These justifications must be "complete enough to allow

---

[1] The government suggests that we review Mr. Lora's argument as to procedural reasonableness under the plain error standard of review, contending that Mr. Lora failed to object to procedural reasonableness at sentencing. We need not address this argument, however, because we affirm under the abuse of discretion standard.

meaningful appellate review." *United States v. Shaw*, 560 F.3d 1230, 1238 (11th Cir. 2009).

The district court's explanation of the sentence was not procedurally unreasonable. The district court was not required to explicitly discuss the role that each § 3553(a) factor played in the sentencing decision. *Robles*, 408 F.3d at 1328. In any event, the court discussed both Mr. Lora's criminal history and the circumstances of the case. *See* D.E. 75 at 17, 19, 21. Additionally, the court stated that it had, in making its determination, considered not only the § 3553(a) factors, but the statements of the parties and the PSI. *Id.* at 19. Notably, prior to sentencing both parties had discussed the circumstances of the crimes, including Mr. Lora's illegal possession of a firearm and the involvement of Mr. Lora's son. And the district court noted that "the sentence imposed [ ] reflect[ed] [ ] offenses involved, which are three different offenses, very different in nature and the defendant's criminal history."

The record, in totality, makes clear that the district court believed that the numerous occasions on which Mr. Lora was convicted of drug-related crimes, as well as the severe circumstances of the present crimes, warranted a sentence above the guidelines range. As the parties primarily focused on these issues during their arguments at sentencing, it was reasonable for the district court to rely on them as

its justification for an upward variance. Contrary to Mr. Lora's argument, the law does not require an ideal explanation. *See Irey*, 612 F.3d at 1186–87.

One final point merits discussion. Mr. Lora argues that the district court improperly replied on his status as an alien to justify its upward variance. Presumably, this argument is based on the government's statement that Mr. Lora had "no reason to be in the United States other than to commit crimes." There is no indication, however, that the district court relied on Mr. Lora's status as an alien when determining the appropriate sentence.  And in any event, the government was not implying that Mr. Lora deserved a harsher sentence because he is an alien; rather, the government was attempting to illustrate that, based on his criminal history and employment status, Mr. Lora had illegally reentered the country for the purpose of engaging in additional criminal activity. The record does not support Mr. Lora's argument that the district court considered an improper factor in determining his sentence.

In sum, the district court adequately explained and supported its reasons for the upward variance, and its sentence was not procedurally unreasonable. The district court did not abuse its discretion.

### III

Mr. Lora also argues that his sentence was substantively unreasonable because the sentence is inconsistent with sentences imposed on offenders

9

convicted of similar crimes with similar guidelines ranges. He asserts that, of 154 similar offenders sentenced in 2011, 2012, and 2013, "three received a sentence in excess of the high-end" of the guidelines range. He also cites two specific examples of defendants convicted of similar crimes in this Circuit who received sentences within the guidelines range. Mr. Lora thus argues that his 120-month sentence creates an unwarranted sentencing disparity.

The government contends that we should not consider the sentencing disparity data attached to Mr. Lora's initial brief because it was not properly presented at sentencing. It also argues that Mr. Lora is not similarly situated to the defendants included in the data.

We review the substantive reasonableness of a sentence for abuse of discretion. *See United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015). The party challenging the sentence bears the burden of proving it was unreasonable. *Id.*

The district court must impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" listed in § 3553(a)(2), including the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public from the defendant's future conduct. *See* § 3553(a). In determining a particular sentence, the district court should also consider other factors, including "the need to avoid

unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* § 3553(a)(6).

A district court abuses its discretion and imposes a substantively unreasonable sentence only when it "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *Rosales-Bruno*, 789 F.3d at 1256 (quoting *Irey*, 612 F.3d at 1189) (quotation marks omitted). The weight given to any specific factor is committed to the "sound discretion" of the district court, and that court does not necessarily commit reversible error simply because it attaches significant weight to a single § 3553(a) factor. *See United States v. Willliams*, 526 F.3d 1312, 1322 (11th Cir. 2008). We "may not presume that a sentence outside the guidelines is unreasonable, and we must give 'due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance.'" *Irey*, 612 F.3d at 1187 (quoting *Gall*, 552 U.S. at 51).

Mr. Lora has not demonstrated that the sentence is substantively unreasonable. The district court primarily relied on Mr. Lora's criminal history and the circumstances surrounding the crime in imposing the upward variance. *See* D.E. 75 at 18–19. The record supports the district court's determination. Mr. Lora's criminal history, i.e., various convictions for drug possession and

distribution, indicates that he has been involved in the drug trade for the majority of his time in the United States. Mr. Lora acknowledged that he was indeed a drug dealer, and his statements indicated that he was willing to continue engaging in the drug trade. Although he said that he returned to the United States because of his family, he also involved his son in his crimes, and his son was convicted of a felony as a result. Considering Mr. Lora's criminal history, the need for adequate deterrence, and his likelihood of recidivism, an upward variance was not unreasonable.

Neither the law nor the record supports Mr. Lora's argument that the district court's sentence created an unwarranted sentencing disparity between defendants similarly situated to him. He presents only evidence of offenders with similar guidelines ranges and criminal history categories; there is no indication that these offenders had similar characteristics or histories of recidivism. Even if there were a disparity between similar offenders here, the weight to be given each § 3553(a) factor is within the discretion of the district court, and there is no indication that the district court gave other factors undue weight. Simply put, district courts do not calculate criminal sentences by using computer software.  Rather, they do what the district court did in this case—consider the defendant's criminal history, offense level, and the § 3553(a) factors, holistically, to determine the appropriate sentence. *See United States v. Lozano*, 490 F.3d 1317, 1324 (11th Cir. 2007) ("The district

court may determine on a case-by-case basis the relative weight to give the Guidelines range in light of the other section 3553(a) factors.").

Giving the substantial deference we must accord the district court in its consideration of the § 3553(a) factors, we conclude that Mr. Lora's sentence of 120 months' imprisonment is not substantively unreasonable.

## IV

We affirm Mr. Lora's sentence.

**AFFIRMED.**