[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 23, 2006
THOMAS K. KAHN
CLERK

_____

No. 04-15487

_____

D.C. Docket No. 04-20144-CR-PAS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GEORGE W. NORRIS,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

**(June 23, 2006)**

Before DUBINA and KRAVITCH, Circuit Judges, and STROM*, District Judge.

_____

* Honorable Lyle E. Strom, United States District Judge for the District of Nebraska,
sitting by designation

STROM, District Judge:

Appellant, George Norris, appeals the seventeen-month (17) sentence imposed by the district court after he pled guilty to a multi-count indictment charging him with conspiring to import and importing plant specimens in violation of the Convention on International Trade in Endangered Species of Wild Fauna and Flora, as implemented by the Endangered Species Act of 1973, 16 U.S.C. §§ 1531, *et seq.* Norris challenges the district court's interpretation of the term "market value of the plants" in § 2Q2.1 of the United States Sentencing Guidelines and also contends that the district court violated his Sixth Amendment rights under *United States v. Booker*, 543 U.S. 220 (2005).

I.

A.     **Regulatory Background**

The United States and Peru are signatories to the Convention on International Trade in Endangered Species of Wild Fauna and Flora ("the CITES"). Mar. 3, 1973, 27 U.S.T. 1087. Congress implemented the CITES into U.S. law in the Endangered Species Act of 1973 ("the ESA"), 16 U.S.C. §§ 1531, *et seq.* The ESA makes it unlawful to "engage in any trade in any specimens," or "possess any specimens traded," contrary to the provisions of the [CITES] and authorizes the Secretary of the Interior to promulgate regulations to enforce the

2

ESA. 16 U.S.C. §§ 1538(c)(1) and 1540(f). The CITES regulates the trade of those endangered species of fish, wildlife, and plants listed in its appendices. *See* CITES, art. II, 27 U.S.T. at 1092. The degree of trade regulation under CITES depends on the appendix in which a specimen is listed. *Id*. This case concerns the importation of orchids in the genus *Phragmipedium*, which are listed in Appendix I of the CITES ("Appendix I plants"), and orchids in the Family *Orchidaceae*, which are listed in Appendix II of the CITES ("Appendix II plants"). *See generally* CITES, Apps. I and II. To import Appendix I plants into the United States, an importer must obtain (1) a valid export permit from the country of origin and (2) a valid import permit from the United States Fish and Wildlife Service ("USFWS"). *See* CITES, art. III at 1093-95; 50 C.F.R. § 23.12(a)(1)(i). To import Appendix II plants into the United States, an importer must obtain a valid export permit from the country of origin. *See* CITES, art. IV at 1095-97; 50 C.F.R. § 23.12(a)(2)(i). The documentation accompanying a shipment of CITES-protected plants must, *inter alia*, "plainly and correctly bear on the outer container or on a tag, invoice, packaging list, or other document accompanying the plant . . . [the] genus and species, and quantity of each [plant]." *See* 7 C.F.R. § 355.20(a).

## B. Factual Background

On March 11, 2004, a federal grand jury returned an eight-count indictment against George Norris, a resident of Texas, and his co-conspirator, Manuel G. Arias Silva ("Arias"), a resident of Peru. Count I alleged that Norris and Arias conspired to import unlawful merchandise into the United States, in violation of 18 U.S.C. § 545, to make false statements to federal customs and plant inspectors, in violation of 18 U.S.C. § 1001(a), and to trade in specimens and possess specimens contrary to the provisions of the CITES and the ESA, in violation of 16 U.S.C. § 1538(c)(1). Count I sets out the manner and means of the conspiracy as follows: (1) Arias caused orchids to be shipped to the United States from Peru without a valid CITES export permit from the country of origin. Specifically, Arias obtained CITES permits for particular species of orchids that were identified on the permit as being artificially propagated. Arias, at the instruction of Norris, then substituted and exported orchids that were different species than those authorized for export on the permits and/or not artificially propagated; (2) Arias and Norris caused false labels to be placed on the orchids in order to conceal the fact that the plants were not authorized for export by the accompanying permits; (3) Arias provided a code or "key" to Norris that would provide a means for

deciphering the false labels and identifying the true species of the orchids; and (4) that Norris offered for sale and sold CITES-protected orchids received from Arias.

Count I also recounts a number of overt acts undertaken by Norris and Arias in furtherance of the conspiracy. These overt acts included (1) a series of written communications between Norris and Arias wherein they discussed, at length when, where, and how to import CITES-protected plants into the United States without detection; (2) Arias' shipping of approximately 1,145 orchids to Norris on or about February 12, 2003, containing 45 *Phragmipediums* and at least 445 Appendix II orchids; and (3) Arias' shipping of approximately 700 orchids to Norris on or about August 19, 2003, containing an undisclosed number of *Phragmipediums* and several Appendix II orchid species.

Counts II-IV of the indictment charged Norris and Arias with smuggling, in violation of 18 U.S.C. § 545, by illegally importing CITES-protected orchids contrary to the CITES and the ESA in May 2002, February 2003, and August 2003. Specifically, Count II alleged that Norris illegally imported *Phragmipedium* specimens in May 2002; Count III alleged that Norris illegally imported at least 45 *Phragmipedium* specimens and at least 445 specimens of various Appendix II orchids in February of 2003; and Count IV alleged that Norris imported

approximately 700 orchids that included *Phragmipedium* specimens and several Appendix II orchid species in August of 2003.

Counts V-VI alleged that Norris violated 18 U.S.C. § 545 by facilitating the transportation and sale of merchandise that he knew to have been imported contrary to law and with selling orchids from the February 2003 and August 2003 shipments. Count VII accused Norris and Arias of making false statements, in violation of 18 U.S.C. § 1001(a), by causing the February 2003 shipment to be shipped with an invalid CITES permit and false labeling. Count VIII presented a false statement charge against Arias that did not involve Norris.

On June 18, 2004, Norris pled guilty to the charges in the indictment without a plea agreement. The presentence investigation report ("PSR") assessed a base level of 6 pursuant to § 2Q2.1(a) of the United States Sentencing Guidelines ("the Guidelines" or "U.S.S.G") and recommended, *inter alia*, an 8-level enhancement under §§ 2Q2.1(b)(3)(A)(ii) and 2B1.1(b)(1)(E) because the market value of the shipments exceeded $70,000.

Norris objected to the PSR contending, *inter alia*, that the probation officer's assessed market value of the orchids was erroneous and that it resulted in an increased sentence in violation of his Sixth Amendment rights under *Blakely v. Washington*, 542 U.S. 296 (2004). Specifically, Norris contended that the

probation officer's assessed market value was erroneous because it was based on the market value of the orchid shipments in their entirety, rather than on the market value of the orchids that had been undocumented in the CITES permits accompanying each shipment. Norris also filed a motion for downward departure based upon his good works, community support, advanced age, and poor health.

At the sentencing hearing, held on October 5, 2004, Norris renewed his objection to the PSR's calculation of the market value of the orchids under § 2Q2.1(b)(3), contending that the market value of his offense should be based solely on the market value of the undocumented orchids in the CITES permits because that was the only actual criminal conduct at issue. The government, on the other hand, argued that each shipment in its entirety should be valued, including the correctly documented plants, because the false and misleading CITES permit for each shipment rendered the entire shipment illegal. The parties thereafter filed a joint exhibit wherein they stipulated (1) that the retail value of the shipments under the government's valuation theory was $86,947 (corresponding to an 8-level increase under §§ 2Q2.1(b)(3)(A)(ii) and 2B1.1(b)(1)(E)) and (2) that the retail value of the shipments under Norris' theory was $44,703 (corresponding to a 6-level increase under §§ 2Q2.1(b)(3)(A)(ii) and 2B1.1(b)(1)(E)).

After considering the Guidelines and each party's valuation theory at length, the district court, in agreeing with the government, concluded that the false and misleading CITES permits rendered the entire shipments illegal and, therefore, that the appropriate market value to be considered under § 2Q2.1(b)(3)(A) was the market value of each shipment in its entirety. The district court imposed a sentence of seventeen (17) months imprisonment, two years of supervised release, and a $700 special assessment. The district court stated that it would have imposed the same sentence if the Guidelines were advisory. Norris appealed.

## II.

The central issue presented for review in this case is whether the district court misinterpreted § 2Q2.1 of the Guidelines in basing the market value of Norris' offense on the value of the shipments in their entirety and not just on the value of the undocumented orchids within each shipment. This issue is one of first impression in this and other circuits. For reasons set forth below, we conclude that "market value" under § 2Q2.1 of the Guidelines should include the value of the entire shipment where the customs documentation was false and misleading and where the correctly documented fish, wildlife, or plants were part and parcel of a charged, and subsequently pled to, conspiracy to illegally smuggle undocumented CITES-protected fish, wildlife, or plants into the United States.

8

## A. Standard of Review

We review a district court's application and interpretation of the sentencing guidelines *de novo*. *United States v. Murphy*, 306 F.3d 1087, 1089 (11th Cir. 2002).

## B. Discussion

Under the Sentencing Guidelines, the applicable specific offense guideline for Norris' offenses is § 2Q2.1 (Offenses involving Fish, Wildlife, and Plants). The base offense level under § 2Q2.1 is 6. Specific Offense Characteristics increase the base offense level under § 2Q2.1 by (1) two levels if the offense was committed for pecuniary gain or for a commercial purpose or the offense involved a pattern of similar violations; (2) two levels if the offense involved fish, wildlife, or plants that were not quarantined as required by law or otherwise created a significant risk of infestation or disease transmission potentially harmful to humans, fish, wildlife, or plants; and (3) varying levels depending on the market value of the fish, wildlife, or plants involved.

At issue here is the application of Specific Offense Characteristic 2Q2.1(b)(3)(A), which provides in relevant part:

> (A)    If the market value of the fish, wildlife or plants (I) exceeded $2,000 but did not exceed $5,000, increase by **1** level;

or (ii) exceeded $5,000, increase by the number of levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount;

The commentary to § 2Q2.1 explains that "market value" means the fair-market retail price of the fish, wildlife, or plants. However, neither § 2Q2.1 nor the comments thereto discuss how "market value" should be calculated when an imported shipment contains undocumented CITES-protected plants alongside correctly documented ones. The government argues that market value should be based on the value of the entire shipment because the defendant's misrepresentations and omissions on the CITES permit rendered the entire shipment illegal. Norris, on the other hand, argues that the market value of the plants should be based solely on the number of undocumented or misidentified CITES-protected plants because that is the only actual criminal conduct at issue.

While there is no case law addressing this issue, § 1B1.3 of the Guidelines, which is a Guidelines' principle of general applicability, is instructive. Section 1B1.3, entitled "Relevant Conduct (Factors that Determine the Guideline Range)," provides in pertinent part:

(a) Chapter Two (Offense Conduct) and Three Adjustment). Unless otherwise specified . . . specific offense

10

characteristics . . . shall be determined on the basis of the following:

(1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant;

. . .

that occurred during the commission of the offense of conviction, in preparation for that offense, *or in the course of attempting to avoid detection or responsibility for that offense* . . . .

U.S.S.G. § 1B1.3(a)(1) (2003) (emphasis added).

Because the market value enhancement in § 2Q2.1 of the Guidelines is a special offense characteristic, the conduct described in § 1B1.3 is relevant to the market value calculation in § 2Q2.1. Thus, all acts and omissions committed or counseled by Norris that occurred during the commission of his offense of conviction, in preparation for that offense, *or in the course of attempting to avoid detection or responsibility* for that offense are relevant to calculation of the market value enhancement under § 2Q2.1.[1] In this case, Norris and Arias conspired to

---

[1] Although we express no opinion on whether relevant conduct must be criminal conduct as that issue is not before us under the facts of this case, several other circuits have already weighed in on the matter. *See, e.g.*, *United States v. Schaefer*, 291 F.3d 932, 939-40 (7th Cir. 2002) (holding that relevant conduct must be criminal in nature); *United States v. Dove*, 247 F.3d 152, 155 (4th Cir. 2001) ("We thus conclude that relevant conduct under the Guidelines must be criminal conduct."); *United States v. Peterson*, 101 F.3d 375, 385-86 (5th Cir. 1996) (holding that "[f]or conduct to be considered 'relevant conduct' for the purpose of establishing ones [sic]

illegally smuggle CITES-protected orchids into the United States by strategically

packaging undocumented orchids alongside correctly documented orchids ("the

legal orchids").  The letters that were exchanged between Norris and Arias in

furtherance of the conspiracy establish that they tried to avoid customs' detection

of the undocumented orchids by (1) shipping small quantities of undocumented

orchids amongst large quantities of documented orchids; (2) placing

undocumented orchids at the bottom of shipments and legal orchids at the top of

shipments so that inspectors, upon inspecting the top of the shipments, would be

fooled into thinking that the entire shipment was legal; and (3) using false and

misleading customs documentation, in violation of 7 C.F.R. § 355.20(a), to

smuggle the undocumented orchids into the country.  In this way, the legally

imported orchids were an integral part of the conspiracy to import undocumented

CITES-protected orchids in the country.

For these reasons, we conclude that the legally imported orchids were used

to avoid the detection of the undocumented  orchids and that, under § 1B1.3 of the

Guidelines, the market value of the legally imported orchids was relevant conduct

---

offense level that conduct must be criminal" and remanding to district court to determine whether $1.3 million alleged loss was the result of a civil violation of the fiduciary agreement or the result of criminal conduct); *United States v. Dickler*, 64 F.3d 818, 830-31 (3d Cir. 1995) (holding that relevant conduct within the meaning of § 1B1.3 must be criminal conduct and vacating and remanding case for resentencing where some of the behavior included in the fraud loss calculation occurred before the statute proscribing the behavior was enacted).

under the Guidelines and was appropriately considered by the district court in determining Norris' adjusted offense level under § 2B1.1(b)(1) of the Guidelines.

**III.**

Next, Norris argues that the district court violated his Sixth Amendment rights under *Booker* because the district court's market value calculation was based on facts that were neither admitted by Norris nor proven to a jury beyond a reasonable doubt. Because Norris objected to the market value sentence enhancement in the district court, we review the challenge to his sentence *de novo*. *United States v. Paz*, 405 F.3d 946, 948 (11th Cir. 2005). We will reverse the district court only if any error was harmful. *Id*. There are two harmless error standards. *United States v. Mathenia,* 409 F.3d 1289, 1291 (11th Cir. 2005). One applies to *Booker* constitutional errors, the other to *Booker* statutory errors. This case concerns *Booker* constitutional error. *Booker* constitutional errors are harmless where the government can show, beyond a reasonable doubt, that the error did not contribute to the defendant's ultimate sentence. *Id*. at 1291-92 (citing *Paz*, 405 F.3d at 948-49).

Norris' *Booker* challenge is without merit. The district court did not make any findings of fact relating to the market value of the orchids. Rather, once the district court determined which parties' theory of valuation to apply, the court

13

based the market value enhancement on the values stipulated to by Norris and the government under their respective valuation theories. Furthermore, any error committed by the district court in sentencing Norris under the pre-*Booker* mandatory guidelines scheme was harmless because the district court stated that it would have imposed the same sentence even if the Guidelines were advisory. *See United States v. Robles,* 408 F.3d 1324, 1327 (11th Cir. 2005) (finding *Booker* constitutional error harmless beyond a reasonable doubt where the district court expressly stated that it would have imposed the same sentence had the guidelines been advisory rather than mandatory).

## III.

Lastly, Norris argues that the district court erred in refusing to grant his motion for downward departure based on his age, health, good works, and community support. This Court lacks jurisdiction to review a district court's discretionary refusal to grant a downward departure, unless the district court incorrectly believed that it lacked the statutory authority to depart from the guideline range. *United States v. Winingear*, 422 F.3d 1241, 1245-46 (11th Cir. 2005). In reviewing the sentencing transcripts in this matter, we are satisfied that the district court understood that it had the authority to downward depart from the Guidelines range, if necessary. Accordingly, we conclude that we lack jurisdiction

14

to review the district court's refusal to grant Norris' motion for a downward departure.

For the foregoing reasons, the sentence imposed by the district court is **AFFIRMED.**