[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 26, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-12856
Non-Argument Calendar

_____

D. C. Docket No. 07-00021-CR-6

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS LUNDY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(January 26, 2009)**

Before BLACK, BARKETT and WILSON, Circuit Judges.

PER CURIAM:

Carlos Lundy appeals his 100-month sentence for distribution of cocaine

base, in violation of 21 U.S.C. § 841(a)(1). On appeal, Lundy first argues that the district court erred by including an uncompleted sale of cocaine to a confidential informant ("CI") in the calculation of his offense level, pursuant to U.S. SENTENCING GUIDELINES MANUAL § 2D1.1. Lundy argues that he had neither the intent to deliver the full two ounces that the CI wanted to buy nor the capability to deliver that amount. Lundy further contends that, based on his subsequent transactions with the CI, the court could only infer that the determinable amount from the uncompleted transaction would have been less than half of the amount for which the CI negotiated. Lundy notes that his offer to sell to the CI was contingent on the CI taking the delivery within a reasonable amount of time, such that when the CI arrived in Statesboro late, there was no longer a deal. Additionally, Lundy contends that he had "no ability" in his own right to complete the transaction because he was wholly dependant on his codefendant for his drug supply.

We review the district court's interpretation and application of the Guidelines *de novo* and review the underlying factual findings for clear error. *United States v. Foley*, 508 F.3d 627, 632 (11th Cir. 2007) (citation omitted), *cert. denied*, 128 S. Ct. 1912 (2008). Where, as here, a drug trafficking offense involves cocaine base (crack cocaine) and one or more controlled substances, the different drugs are converted into their marihuana equivalency to determine which

2

offense level in the Drug Quantity Table set forth in U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(c) applies. The offense level is then reduced by 2-levels. U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(a)(3), cmt. n.10(B), (D)(i).

The commentary to § 2D1.1 provides that quantities of drugs not specified in the count of conviction may be considered in determining a defendant's offense level. U.S. SENTENCING GUIDELINES MANUAL § 2D1.1, cmt. n.12. Where "the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance." *Id.* "In making this determination, the court may consider . . . similar transactions in controlled substances by the defendant. . . ." *Id.* If an offense involved an "agreement" to sell a controlled substance, "the agreed-upon quantity of the controlled substance shall be used to determine the offense level . . . ." *Id.* "If, however, the defendant establishes that the defendant did not intend to provide or purchase, or was not reasonably capable of providing or purchasing, the agreed-upon quantity of the controlled substance, the court shall exclude from" its quantity determination, the amount the defendant establishes that he "did not intend to provide . . . or was not reasonably capable of providing. . . ." *Id.*

There was no indication from the record that Lundy, despite understanding

3

that the CI wanted to buy two ounces of crack cocaine, ever told the CI that he would be unable to provide the CI with the entire amount. Further, Lundy's undisputed statements to the CI– that he had the crack cocaine earlier before the CI arrived and that he would be able to provide the amount later that day– suggest that he still was capable of delivering the drugs to the CI. Accordingly, because Lundy did not show that he lacked the intent or capability to deliver two ounces of crack cocaine to the CI after they negotiated for that amount, the district court did not err in considering the two ounces from the uncompleted sale in its base offense level calculation.

Next, Lundy argues that the sentencing court abused its discretion in not departing downward from a criminal history category of III to a criminal history category of II. The government responds that, because Lundy does not contend that the district court believed it was without authority to downwardly depart pursuant to U.S. SENTENCING GUIDELINES MANUAL § 4A1.3, we lack jurisdiction to review his arguments on the matter.

We review *de novo* questions regarding subject matter jurisdiction. *United States v. Al-Arian*, 514 F.3d 1184, 1189 (11th Cir.) (per curiam), cert. denied, 129S. Ct. 288 (2008). We lack jurisdiction to review a district court's refusal to grant a downward departure, unless the district court incorrectly believed that it

lacked the statutory authority to depart from the Guidelines range. *United States v. Norris*, 452 F.3d 1275, 1282 (11th Cir. 2006) (citation omitted). "[W]e assume the sentencing court understood it had authority to depart downward" when nothing in the record indicates otherwise. *United States v. Chase*, 174 F.3d 1193, 1195 (11th Cir. 1999) (citations omitted). Because nothing in the record indicates that the district court was ignorant of its authority to depart under § 4A1.3, we lack jurisdiction to consider the district court's decision not to depart downward from Lundy's criminal history category.

## CONCLUSION

Upon review of the record and the parties' briefs, we discern no reversible error. Accordingly, we affirm.

**AFFIRMED.**