[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-13748
Non-Argument Calendar
_____

D.C. Docket No. 2:12-cr-00008-WHA-WC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NACRETIA LEWIS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(March 28, 2013)

Before CARNES, BARKETT and MARTIN, Circuit Judges.

PER CURIAM:

The opinion of the panel issued on February 26, 2013 is vacated, with this one substituted in its place.

Nacretia Lewis appeals her convictions and 15-month sentence, imposed after a jury found her guilty of perjury, in violation of 18 U.S.C. § 1623, and making a false statement, in violation of 18 U.S.C. § 1001.  On appeal, Lewis argues that: (1) the evidence was insufficient to support her convictions; and (2) her sentence was procedurally and substantively unreasonable.

I.

Lewis's perjury conviction stems from her giving false alibi testimony under oath before the U.S. District Court for the Middle District of Alabama.  She testified at the jury trial of Janika Bates concerning the whereabouts of Bates on January 20, 2011.  Lewis's false statement conviction is based on her repeating the false alibi story to an IRS special agent after Bates's conviction.

Bates went to trial on charges of conspiracy, identity theft, aggravated identify theft, and wire fraud in September 2011.  At Bates's trial, the government presented evidence from two witnesses, IRS special agent Lisa Fontanette and Natasha Harris (Bates's co-worker), that Bates fled from her workplace at NCO Financial Systems, Inc. (NCO) on January 20, 2011, when IRS agents attempted to arrest her.

2

Lewis testified to a different version of events.  Lewis testified that on January 20, 2011, she was with Bates, a close friend from her childhood who she referred to as her "cousin."  Lewis told the jury she picked up Bates from NCO at around 10:00 a.m. and went to a couple of stores to waste time and have lunch before Lewis's shift started at noon.  Lewis claimed she never took Bates back to work, but rather dropped her off at a bail bondsman where Bates was meeting her mother.  Then, apparently, Lewis returned to NCO a few minutes after noon, where she stayed working until 9:30 p.m. that night.  Lewis further testified that she never saw police around Bates's car that day.

After Bates was convicted, IRS Agent Fontanette interviewed Lewis to determine whether Lewis had given false testimony at Bates's behest.  The question of whether Bates solicited perjury was relevant to Bates's guideline calculation for her sentencing.  Lewis continued to claim that her testimony was truthful.

Lewis was then indicted for perjury and making a false statement. At Lewis's trial, the government presented a number of witnesses.  Agent Fontanette testified that her team, in police attire, arrived at NCO's parking lot around 11:45 a.m. and discovered Bates's car in the parking lot.  After waiting for Bates and unsuccessfully calling her at around 1:30 p.m., the agents looked inside the NCO building but were unable to find her.

3

Agent Fontanette also testified that she met with Lewis after Bates had been convicted in order to question Lewis about her testimony. During that meeting, Agent Fontanette informed Lewis that lying to federal agents was a crime and that she had records from NCO showing that Lewis did not work on January 20, 2011, and that NCO did not pay her for work that day. Lewis's only response was that the phone system employees used to log in was sometimes wrong. Agent Fontanette then asked Lewis whether Bates had asked her to lie for her during the trial. Lewis denied that Bates had done so, and asked Agent Fontanette to leave.

Lewis's alibi testimony from the Bates trial was contradicted by several witnesses. Natasha Harris, a supervisor at NCO, testified that she had seen Bates and interacted with her at the NCO offices on January 20, 2011, after the police arrived and surrounded Bates's vehicle. Steven Behrend, the human resource manager for NCO, testified that if an employee did not log into her phone, she would not be able to do any work and that payroll records were based on phone log-ins. He confirmed that the records did not show that Lewis worked on January 20, 2011, and that Lewis was not paid for working that day. Finally, Lewis's mother, Linda Hadnott, testified that she had a phone conversation in which Lewis told her that a cousin wanted Lewis to lie for her, but did not mention the cousin by name or mention that the lie would be on the witness stand.

4

The government rested, and Lewis asked for a judgment of acquittal, which the court denied.  The jury found Lewis guilty on both counts.  Lewis again moved for a judgment of acquittal on both counts, arguing that the evidence was insufficient to support her convictions.  The court also denied that motion.  The district court sentenced Lewis to 15 months' imprisonment on each count to run concurrently.

## II.

Lewis argues that the evidence was insufficient to sustain her convictions for perjury and making a false statement to a federal agent.  She asserts that the government did not establish her trial testimony as material or that she knowingly gave the false testimony.  Lewis further asserts that her statements to Agent Fontanette were not knowingly false or material.

We review the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict.  United States v. Friske, 640 F.3d 1288, 1290–91 (11th Cir. 2011).  It is unnecessary for the government to present evidence which "exclude[s] every reasonable hypothesis of innocence or [is] wholly inconsistent with every conclusion except that of guilt."  United States v. Harris, 20 F.3d 445, 453 (11th Cir. 1994).  A jury is free to choose among reasonable constructions of the evidence, and we must accept the jury's credibility

determinations and reasonable inferences from the evidence.  United States v.

Garcia, 447 F.3d 1327, 1334 (11th Cir. 2006).

## A. Perjury

To sustain a conviction for perjury under 18 U.S.C. § 1623(a), the

government must prove beyond a reasonable doubt that the testimony was: (1)

false; (2) material; and (3) made with knowledge of its falsity.  United States v. De

La Torre, 634 F.2d 792, 795 (5th Cir. Unit A Jan. 1981).[1]  The test for materiality

is whether the false statement "has a natural tendency to influence, or was capable

of influencing, the decision making body to which it was addressed."  United

States v. Johnson, 485 F.3d 1264, 1270 (11th Cir. 2007) (quotation marks omitted).

Even if the statement did not actually influence the tribunal, it is sufficient if it

could have possibly influenced it.  Id.

Lewis's alibi testimony at Bates's trial directly contradicted the

government's evidence of Bates's flight from her impending arrest on January 20,

2011.  Indeed, if Lewis's testimony was believed it would have "a natural tendency

to influence" the jury's assessment of Bates's guilt.  See Johnson, 485 F.3d at

1270.  Therefore, Lewis's testimony was material as a matter of law.

There was also sufficient evidence for a jury to find that Lewis's statements

were made knowingly.  Lewis testified that she referred to Bates as her "cousin."

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

Lewis's mother testified that Lewis told her that a cousin wanted Lewis to lie for her. A reasonable juror could have inferred that the cousin Lewis was referring to was Bates, and that Lewis knew Bates wanted her to lie for Bates at the upcoming trial. We must accept that reasonable inference here. See Garcia, 447 F.3d at 1334. Thus, Lewis's mother's testimony established the element of knowledge and we affirm Lewis's conviction for perjury.

### B. Making a False Statement

To sustain a conviction under 18 U.S.C. § 1001 for making a false statement, the government must prove: "(1) that the defendant made a false statement; (2) that the statement was material; (3) that the defendant acted with specific intent to mislead; and (4) that the matter was within the purview of a federal government agency." United States v. McCarrick, 294 F.3d 1286, 1290 (11th Cir. 2002).

Lewis does not contest that she made the statements or that they fell within the purview of a federal government agency. However, she says her statements were not false, were not material, and were not made with intent to mislead. There was sufficient evidence to contradict Lewis's testimony and support a finding that her statements were false.

Lewis's statements were material because at the time they were made the government was investigating whether it should pursue a sentencing enhancement against Bates. Therefore, Lewis's reiteration of her false testimony to Agent

7

Fontanette was material because it could have influenced the sentence the government sought for Bates.  See United States v. Boffil-Rivera, 607 F.3d 736, 741 (11th Cir. 2010).

Finally, Lewis's mother's testimony established that Lewis knew her in-court testimony was a lie and Agent Fontanette explained to Lewis that lying to a federal agent was a crime.  Thus, the element of specific intent to mislead was satisfied and we affirm Lewis's conviction for making a false statement.

III.

Lewis also challenges the procedural and substantive reasonableness of her 15-month sentence of imprisonment.  Prior to sentencing, the probation officer calculated Lewis's guideline range to be 15 to 21 months' imprisonment, based on a total offense level of 14 and criminal history category of I.  Lewis argues that her 15-month sentence, imposed at the low end of the guideline range, was procedurally unreasonable because the court failed to consider the possibility of probation and did not adequately consider the § 3553(a) factors.  She also argues that her sentence was substantively unreasonable because, among other things, a non-prison sentence would enable her to care for her special-needs son and receive the weekly therapy she needs to treat her mental illness.

We review the reasonableness of a sentence "under a deferential abuse of discretion standard."  Gall v. United States, 552 U.S. 38, 41, 128 S. Ct. 586, 591

(2007). The district court must impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" listed in 18 U.S.C. § 3553(a)(2). 18 U.S.C. § 3553(a). The court must also consider the other statutory factors listed in § 3553(a)(1), (3)–(7), such as the history and characteristics of the defendant and the kinds of sentences available. Id.

We first ensure that the sentence was procedurally reasonable, meaning that the district court properly calculated the guideline range, treated the guidelines as advisory, considered the § 3553(a) factors, did not select a sentence based on clearly erroneous facts, and adequately explained the chosen sentence. Gall, 552 U.S. at 51, 128 S. Ct. at 597. Once we determine that a sentence was procedurally sound, we examine whether the sentence was substantively reasonable. Id.

The party who challenges the sentence bears the burden of showing that it is unreasonable in light of the record and the § 3553(a) factors. United States v. Tome, 611 F.3d 1371, 1378 (11th Cir. 2010). Although we do not automatically presume that a sentence falling within the guideline range is reasonable, we ordinarily expect such a sentence to be reasonable. United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008).

Lewis argues that her sentence was procedurally unreasonable because the district court did not consider imposing only probation given Lewis's medical and familial issues. However, the record clearly shows to the contrary that the district

9

court carefully considered all of Lewis's arguments for a downward variance and the § 3553(a) factors, including her medical and familial issues. See United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005) (stating that "an acknowledgment by the district court that it has considered the defendant's arguments and the factors in § 3553(a) is sufficient"). The court explained both that it considered Lewis's actions to be serious enough to "undermine[] the entire justice system" and that the medical attention available in prison would be sufficient to "lay a foundation for further help after getting out of prison." The sentence was therefore not procedurally unreasonable.

Lewis's sentence was also substantively reasonable. Under Tome and Hunt, there is a high burden for establishing substantive unreasonableness—a burden Lewis cannot meet. Nothing in the record suggests that the district court made a clear error in judgment in determining that the seriousness of Lewis's offense, the need to create adequate deterrence, and the need to avoid unwarranted sentence disparities with similarly situated defendants outweighed Lewis's personal and family characteristics.[2] Accordingly, Lewis's sentence is substantively reasonable.

**AFFIRMED.**

---

[2] Lewis also argues in her reply brief that the district court was substantively unreasonable because it did not impose a downward departure pursuant to U.S.S.G. §§ 5K2.0, 5K2.13, 5H1.3, 5C1.1, and 5H1.6. However, we lack jurisdiction to hear this argument. United States v. Norris, 452 F.3d 1275, 1282 (11th Cir. 2006).