[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-11522
Non-Argument Calendar

_____

D.C. Docket No. 1:12-cr-00383-CAP-JSA-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HEATH J. KELLOGG,
a.k.a. Red,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(December 15, 2014)

Before MARCUS, WILLIAM PRYOR, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Heath Kellogg appeals his total sentence of 144 months of imprisonment after pleading guilty to several counterfeiting offenses. Kellogg challenges his sentence on three grounds, arguing that (1) the district court erred in applying certain enhancements when calculating his guideline range; (2) his sentence was substantively unreasonable; and (3) the court erred by imposing a $40,000 fine, despite the fact that the presentence investigation report ("PSR") concluded that Kellogg had no ability to pay a fine. After careful consideration, we affirm Kellogg's sentence of imprisonment but vacate the $40,000 fine and remand for further proceedings consistent with this opinion.

**I.**

Kellogg and Stacy Smith, a codefendant, ran a counterfeiting operation based in Atlanta, Georgia. Kellogg was a self-taught graphic designer who created the template for the counterfeit currency based on images that he downloaded from the Internet. Using the template, Kellogg and Smith printed and sold counterfeit notes to several "middlemen," who, in turn, re-sold the bogus notes to others to use for purchasing goods and services. According to the PSR, a total of around $1.25 million in counterfeit notes were manufactured and passed into distribution in the national economy. After being tipped off by a woman who had been dating Smith,

law enforcement conducted several controlled purchases of the counterfeit currency, ultimately leading to Kellogg's arrest.

A federal grand jury indicted Kellogg on one count of conspiracy to produce and deal in counterfeit United States currency, in violation of 18 U.S.C. §§ 371, 471, and 473; two counts of counterfeiting United States currency, in violation of 18 U.S.C. § 471; and one count of dealing in counterfeit currency, in violation of 18 U.S.C. § 473. Kellogg pled guilty to all counts without a written agreement.

In the PSR, the probation officer calculated a base offense level of 9, pursuant to United States Sentencing Guidelines Manual ("U.S.S.G.") § 2B5.1(a). The probation officer then applied the following guidelines adjustments: (1) a sixteen-level increase under §§ 2B5.1(b)(1)(B) and 2B1.1(b)(1)(I)[1] because the offenses involved a total loss of $1.25 million; (2) a two-level increase under § 2B5.1(b)(2) for possessing counterfeiting equipment; (3) a four-level increase under § 3B1.1(a) on the ground that Kellogg was an organizer or leader of a criminal operation that involved five or more participants; and (4) a three-level reduction for acceptance of responsibility under § 3E1.1. With a resulting total offense level of 28 and a criminal history category of V, Kellogg's advisory

---

[1]  Section 2B5.1(b)(1)(B) provides that when the face value of the counterfeit items exceeds $5,000, the offense-level increases for loss amount in § 2B1.1 apply.

3

guideline range was 130–162 months of imprisonment. The guideline range for a fine was $12,500–$125,000.

Notably, Kellogg's financial condition was reviewed in the PSR. The PSR reflects that Kellogg had a negative net worth (-$6,000) and that his family's monthly cash flow, including $568 in food stamps out of a total income of $1,368, was also negative (-$100). According to the PSR, "The defendant's financial condition reflects that he does not have the ability to pay a fine. He would be a good candidate for community service work in lieu of a fine."

Kellogg initially objected to the sixteen-level loss-amount increase under § 2B1.1(b)(1)(I) and the four-level organizer-role enhancement under § 3B1.1(a). At sentencing, however, Kellogg specifically withdrew these objections. Instead of pursuing the objections, Kellogg requested a sentence of 84 months' imprisonment, below the guideline range, arguing that the 2001 amendments to the Sentencing Guidelines had unreasonably increased the penalty levels for counterfeiting offenses without empirical support, so the pre-amendment offense levels should apply. Kellogg further contended that his guideline range overstated his criminal history because the majority of his criminal-history points came from forgery convictions rather than "violent crimes or crimes against persons," and he

4

requested that the court downwardly depart to a criminal history category of III or IV.

The government requested a within-guidelines sentence of 144 months' imprisonment and a fine of $125,000, or one-tenth of the total loss amount. Based on Kellogg's withdrawal of his objections, the government indicated that it would not be presenting the evidence that it had originally planned to present. In objecting to the imposition of a fine, Kellogg highlighted that he had several children to care for and that the court had appointed counsel.

The district court sentenced Kellogg to a total term of 144 months' imprisonment (60 months on Count One and 144 months each on Counts Two through Five, all concurrent). After imposing sentence, the court explained the reasons for the sentence as follows:

> [T]he defendant is 37 years old, this is a sentence for his first federal, but his eighth criminal conviction. Almost all of the offenses prior are fraud related, span over twenty years. He's been sentenced to prison before. He's served approximately eight years total in custody for all his various criminal convictions, but he continues to engage in that kind of activity.
>
> The Court realizes the troubled family background that he's from, but the Court imposes the sentence having in mind the various factors of 18 U.S.C. [§ 3553(a)], particularly the need for rehabilitation of this defendant, the need for deterrence as to particularly this defendant. The Court is unsure that a sentence like this is a

5

deterrence to others that would be inclined to get involved in this kind of activity.

Over Kellogg's objection, the court also imposed a $40,000 fine, stating,

> The fine[] imposed, while it might be a significant amount to the defendant, the Court feels like it's more of a token amount that's in lieu of restitution and only a fraction of the total cost of incarceration that the taxpayers are about to obligate themselves to—or the Court is about to obligate [them] to.

Kellogg now appeals.

## II.

## A.

Kellogg challenges the calculation of his guideline range. He first contends that the district court erred in applying the sixteen-level increase under U.S.S.G. § 2B1.1(b)(1)(I). *See* U.S.S.G. § 2B5.1(b)(1)(B). The facts in the PSR did not support the asserted loss amount of § 1.25 million, he asserts, and the court failed to require the government to prove the amount at sentencing. The court also erred by applying a four-point increase for his role as a leader of a conspiracy involving five or more participants under § 3B1.1(a), he argues, because the PSR did not contain facts that sufficiently supported the increase. Kellogg acknowledges that he withdrew his objections at sentencing but maintains that plain-error review applies.

Ordinarily, with respect to the district court's guideline calculations, we review legal questions *de novo,* the district court's factual findings for clear error, and the district court's application of the Guidelines to the facts with due deference, which amounts to review for clear error. *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010). And we generally review issues raised for the first time on appeal only for plain error.[2] *United States v. Madden*, 733 F.3d 1314, 1319 (11th Cir. 2013). But we have held that a defendant's clear and affirmative withdrawal of a sentencing objection waives review of such objection on appeal, even for plain error. *United States v. Horsfall*, 552 F.3d 1275, 1283-84 (11th Cir. 2008); *United States v. Masters*, 118 F.3d 1524, 1525-26 (11th Cir. 1997); *cf. United States v. Olano*, 507 U.S. 725, 733, 113 S. Ct. 1770, 1777 (1993) ("Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." (internal quotation marks omitted)).

Our review of the sentencing-hearing transcript shows that Kellogg withdrew his objections to the guidelines-calculation issues he now seeks to raise on appeal, and, therefore, has waived appellate review of those issues. *See*

---

[2] "The plain-error test has four prongs: there must be (1) an error (2) that is plain and (3) that has affected the defendant's substantial rights; and if the first three prongs are met, then a court may exercise its discretion to correct the error if (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Madden*, 733 F.3d at 1320 (brackets and internal quotation marks omitted).

*Horsfall*, 552 F.3d at 1283-84; *Masters*, 118 F.3d at 1525-26.  Specifically, after Kellogg indicated that he wished to withdraw his objections to the PSR at sentencing, the district court directly asked whether Kellogg was withdrawing his objections to the enhancements for the total loss amount and for his role as organizer/leader.  Kellogg (through counsel) responded to both questions, "Yes, Judge," and, upon the court's further inquiry, stated that he had no other objections.  Based on Kellogg's affirmative withdrawal of his objections, the government did not present the evidence that it had planned to present.  By withdrawing his objections, Kellogg waived review of any error by the district court in applying the challenged enhancements.  *See Horsfall*, 552 F.3d at 1283-84.

In any case, even if we treated the issues as forfeited, rather than waived, we could not say that the district court committed plain error in applying the enhancements.  Given that Kellogg withdrew his objections, the district court was permitted to rely on statements in the PSR concerning the enhancements.  *See United States v. Aguilar-Ibarra*, 740 F.3d 587, 592 (11th Cir. 2014) (stating that "[a] district court may . . . base its factual findings on undisputed statements in the PSR," even conclusory ones for which "there is an absence of supporting evidence," "because a defendant is deemed to have admitted any such statements

that he has not objected to with specificity and clarity" (internal quotation marks omitted)).

Here, the PSR contains sufficient factual content to support the enhancements under plain error review. First, the PSR expressly states that Kellogg was behind the production of over $1 million in counterfeit notes made for distribution and that "[a] total of at least $1.3 million in [counterfeit notes] were manufactured and passed," so it was not plainly erroneous for the court to apply the sixteen-level increase for a total loss amount of more than $ 1million. *See* U.S.S.G. § 2B1.1(b)(1)(I).

Second, the court did not plainly err in finding that Kellogg "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). The PSR reflects that Kellogg recruited Smith to the criminal conspiracy; that Kellogg procured the printing equipment, designed templates for printing the counterfeit notes, and then sold them to at least three other middlemen for resale to numerous others; and that he was behind the production of more than $1 million in counterfeit notes intended for distribution. Thus, it was not plainly erroneous for the court to find that Kellogg organized or led criminal activity that involved five or more participants and that Kellogg exercised "control or influence" over at least one other participant in the

9

conspiracy. *See United States v. Glover*, 179 F.3d 1300, 1302 (11th Cir. 1999); U.S.S.G. § 3B1.1, comment. (n.2). Consequently, Kellogg would not be entitled to relief even if the sentencing-enhancement issues were not waived.

**B.**

Kellogg next argues that the district court imposed a substantively unreasonable sentence by relying on the guideline range for his counterfeiting offenses, which, he asserts, lacks empirical support. He also contends that the sentence was unreasonable because the court did not downwardly depart to a lower criminal history category under U.S.S.G. § 4A1.3(b).[3]

We lack jurisdiction to review the district court's discretionary denial of Kellogg's request for a downward departure with regard to his criminal history category. *United States v. Norris*, 452 F.3d 1275, 1282 (11th Cir. 2006) ("This Court lacks jurisdiction to review a district court's discretionary refusal to grant a downward departure, unless the district court incorrectly believed that it lacked the statutory authority to depart from the guideline range."); *United States v. Chase*, 174 F.3d 1193, 1195 (11th Cir. 1999). Kellogg does not argue that the district court incorrectly believed it lacked authority to issue such a departure, and the

---

[3] Section § 4A1.3(b) provides, "If reliable information indicates that the defendant's criminal history category substantially overrepresents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted."

record contains no indication that the court was unaware of its authority to do so. *See Norris*, 452 F.3d at 1282-83; *see also United States v. Dudley*, 463 F.3d 1221, 1228 (11th Cir. 2006). Nevertheless, we will consider Kellogg's arguments about his criminal history in analyzing the substantive reasonableness of his sentence.

We review a defendant's sentence for reasonableness under an abuse-of-discretion standard. *Peugh v. United States*, 569 U.S. __, __, 133 S. Ct. 2072, 2080 (2013). The party challenging the sentence has the burden of establishing its unreasonableness in light of the record and the factors in 18 U.S.C. § 3553(a). *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005).

The district court must impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" listed in § 3553(a)(2), including the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter future criminal conduct, and protect the public. 18 U.S.C. § 3553(a)(2). In imposing a particular sentence, the court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guideline range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. 18 U.S.C. § 3553(a)(1), (3)-(7).

11

The weight given to any particular § 3553(a) factor is generally a matter committed to the sound discretion of the district court. *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008). The court must state its reasons for imposing a particular sentence, but the court is not required to address each § 3553(a) factor on the record. *Talley*, 431 F.3d at 786; 18 U.S.C. § 3553(c). We will vacate a sentence only if "we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors" under the facts of the case. *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (*en banc*) (internal quotation marks omitted).

Here, the district court did not abuse its discretion in imposing a within-guidelines-range sentence of 144 months of imprisonment. *See, e.g.*, *United States v. Alfaro-Moncada*, 607 F.3d 720, 735 (11th Cir. 2010) ("If the district court's sentence is within the guidelines range, we expect that the sentence is reasonable."). The court concluded that the 144-month sentence satisfied the purposes of sentencing, including the need to deter Kellogg from future criminal activity. As the court referenced, the PSR reflects that Kellogg had 8 prior convictions, almost all of which were fraud-related. And even though he had served several years in prison for these prior offenses, he continued to engage in fraudulent criminal activity. Indeed, he was on probation for two prior convictions

12

at the time of the instant offenses.  What's more, the counterfeiting convictions in this case were more serious, sophisticated, and widespread than his previous offenses.  Therefore, in view of Kellogg's ongoing pattern of disrespect for the law, the district court reasonably could have concluded that a lengthy sentence was necessary to deter Kellogg from future criminal activity.

Although the district court did not explicitly discuss Kellogg's argument that the counterfeiting guidelines were not supported by empirical data, it was not required to do so.  *Talley*, 431 F.3d at 786.  Nor was the court compelled to vary downward on that basis alone, even assuming that Kellogg's assertion about the lack of empirical support is accurate.  *United States v. Snipes*, 611 F.3d 855, 870 (11th Cir. 2010) ("[T]he absence of empirical evidence is not an independent ground that compels the invalidation of a guideline."); *see Kimbrough v. United States*, 552 U.S. 85, 93, 109-10, 128 S. Ct. 558, 565, 575 (2007) (upholding a downward variance based, in part, on the district court's conclusion that the crack cocaine guidelines were "disproportionate and unjust").  Rather, the absence of empirical data behind a guideline is just one factor a district court may consider in deciding whether to vary from the guideline range.  *Snipes*, 611 F.3d at 870.

Moreover, we disagree with Kellogg's suggestion that the Sentencing Commission changed the guidelines applicable to this case for no real reason.

13

When it adopted the new loss table in § 2B1.1, increasing the penalty levels for these and similar offenses beginning in 2001, the Commission explained the basis for the amendments as follows:

> The new loss tables also provide substantial increases in penalties for moderate and higher loss amounts, even, for fraud and theft offenses . . . . These higher penalty levels respond to comments received from the Department of Justice, the Criminal Law Committee of the Judicial Conference, and others, that the offenses sentenced under the guidelines consolidated by this amendment under-punish individuals involved with moderate and high loss amounts, relative to penalty levels for offenses of similar seriousness sentenced under other guidelines.

U.S.S.G. App. C, Amend. 617 (2001).  It was not unreasonable for the district court to have relied on the loss table reflected in Amendment 617.

In short, Kellogg has not established that his 144-month total sentence was substantively unreasonable in light of his significant and repetitive history of committing fraud crimes and the serious nature of the instant offenses, which involved the distribution of over $1 million in counterfeit currency.

## C.

Finally, Kellogg argues that the district court imposed a fine despite clear evidence showing that he was unable to pay one.

We review the district court's determination of the appropriate fine for clear error.  *United States v. Lombardo*, 35 F.3d 526, 527 (11th Cir. 1994).  The

14

Sentencing Guidelines provide that the imposition of a fine is mandatory unless "the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a). The defendant therefore bears the burden of establishing his inability to pay a fine. *Lombardo*, 35 F.3d at 527.

In determining an appropriate fine, the court must consider seven factors, as specified in § 5E1.2(d), including the "defendant's income; earning capacity; financial resources; the burden on the defendant and his dependents; pecuniary loss inflicted on others as a result of the offense; whether restitution is ordered; [and] the need to deprive the defendant of illegal gains." *United States v. Khawaja*, 118 F.3d 1454, 1459 (11th Cir. 1997); *see also* 18 U.S.C. § 3572(a) (setting forth similar factors for the district court's consideration in imposing a fine).

We do not require the district court to make specific factual findings concerning each of the § 5E1.2(d) factors, but "we need the court's reasoning or sufficient record evidence to show consideration of these factors for our review." *United States v. Garrison*, 133 F.3d 831, 849 (11th Cir. 1998). For example, if the PSR presented information with respect to the § 5E1.2(d) factors, and the district court reviewed the PSR prior to imposing the fine, we may "infer without hesitation" that the district court considered the pertinent factors before imposing the fine. *Khawaja*, 118 F.3d at 1459. However, "[i]f the record does not reflect

15

the district court's reasoned basis for imposing a fine, we must remand the case so that the necessary factual findings can be made." *United States v. Gonzalez*, 541 F.3d 1250, 1256 (11th Cir. 2008) (internal quotation marks omitted); *United States v. Rowland*, 906 F.2d 621, 624 (11th Cir. 1990) (vacating the fine imposed and remanding for further consideration of the fine issue).

Here, we vacate the fine imposed and remand for further proceedings because the record is insufficient to allow this Court to review the district court's decision that $40,000 was an appropriate amount to fine Kellogg. *See United States v. Paskett*, 950 F.2d 705, 709 (11th Cir. 1992). The district court's explanation contains no basis for concluding that Kellogg had the future ability to pay the $40,000 fine. In deciding on the $40,000 fine, the court specifically considered that restitution could not feasibly be ordered and that the cost of confinement was about $28,000 per year. While the court found that Kellogg did not have the current ability to pay a fine, it questioned whether Kellogg "should [] be let off the hook because he doesn't [k]now when he might have that possibility in the future." This statement was as far as the court went in discussing Kellogg's future ability to pay.

While our case law is clear that we may review the PSR, which the district court adopted, and other record evidence to determine if there is a reasoned basis

16

for imposing the fine, we find the PSR in this case to be inconclusive as to Kellogg's ability to pay a $40,000 fine in the future. *See Khawaja*, 118 F.3d at 1459. The government points to facts in the PSR indicating the Kellogg had earned $20,000 to $30,000 a year from 2004 to 2006, and had been steadily employed from 1999 to 2012 except for a period of incarceration. And the government highlights the graphic design talent Kellogg evidenced in creating the counterfeit notes, which, the government asserts, demonstrates his earning potential upon release from prison.

Although the PSR reflects that Kellogg, who was 37 years old at sentencing, appears to have maintained some level of employment from 1999 to 2012, and clearly had some competence with graphic design, other factors weigh against Kellogg's future ability to pay the $40,000 fine. In particular, we highlight the following: (1) Kellogg has at least three dependent children; (2) his family's monthly cash flow was negative, even including the fact that nearly half the income was from food stamps; (3) Kellogg had a negative net worth; (4) Kellogg was appointed counsel for the criminal case, *see* U.S.S.G. § 5E1.2, comment. (n.3) ("[T]he fact that a defendant is represented by (or was determined eligible for) assigned counsel [is a] significant indicator[] of present inability to pay any fine. In conjunction with other factors, [it] may also indicate that the defendant is not

17

likely to become able to pay any fine."); and (5) the probation officer, after reviewing Kellogg's financial condition, did not recommend imposing a fine. The record is also inconclusive as to whether Kellogg's graphic design company derived any legitimate income—or the amount of any such income—from 2009 to 2012. One of the government's representations at sentencing—that the counterfeiting operation was how Kellogg was supporting his family—indicates that his graphic design company may not have been particularly successful.

In short, we find the record insufficient to conclude that the district court had a reasoned basis for imposing the $40,000 fine. The court clearly considered some relevant § 5E1.5(d) factors in support of imposing a fine, but the court did not explain, and we cannot discern from the PSR or record evidence, the reasoned basis the court had for concluding that Kellogg had the future ability to pay a $40,000 fine. Consequently, we vacate the district court's imposition of the $40,000 fine, and we remand the case for further consideration of this issue in compliance with the Sentencing Guidelines. *See Paskett*, 950 F.2d at 709; *Rowland*, 906 F.2d at 623-24.

## IV.

In sum, and for the reasons explained above, we **AFFIRM** Kellogg's total sentence of imprisonment, but we **VACATE** the district court's imposition of

18

Kellogg's $40,000 fine and **REMAND** the case for the limited purpose of determining whether there is a reasoned basis for imposing a fine on Kellogg.